## Case No. 15,756.

UNITED STATES v. MECHANICS' BANK.

[Gilp. 51.] [1]

District Court, E. D. Pennsylvania. Feb. 27, 1829.

ASSUMPSIT—JUDGMENT—EXECUTION—GOVERNMENT PRIORITY—LIEN.

1. The proceeds of an execution out of a state court, being in the sheriff's hands, and claimed both by the plaintiff and by the United States, who were also judgment creditors, were paid to the former on his agreeing to pay them over to the latter, if "the said court" decided they were entitled to them; *held*, that assumpsit for money had and received will lie at the suit of the United States, in this court, against the receiving creditor.

2. The priority of the United States gives no lien on property under execution when it accrued.

3. Levy and condemnation under an execution keep a judgment alive, and preserve the lien without a scire facias.

4. Land may be sold under a later judgment, without any impediment from an earlier one.

This case was tried on the 18th February, 1829, before HOPKINSON, District Judge, and a special jury, who found a verdict for the United States, subject to the opinion of the court on the whole case.

Mr. Ingersoll, U. S. Dist. Atty.
Mr. Bradford, for defendant.

HOPKINSON, District Judge. The facts, on which the question in this case arises, are these: The United States obtained, in this court, two judgments against John Greiner on duty bonds; the first, on the 21st February, 1825, for five hundred and seventy-eight dollars, and fifty cents; the second, on the 2d May, 1825, for one thousand and ninety-two dollars and forty cents. The greater parts of these debts have been recovered; but a balance remains due. On the 1st February, 1826, the United States, issued a fieri facias on each judgment, which were levied on the property in question, being certain real estate in Race street, in the city of Philadelphia; an inquisition was held and the property condemned under the executions. This is the foundation of the claim of the plaintiff. On the other hand Stephen Girard obtained a judgment, since assigned to the defendant, against the same John Greiner, on the 27th October, 1819, in the supreme court of Pennsylvania. On the 23d October,

[1] [Reported by Henry D. Gilpin, Esq.]

1820, a fieri facias was issued on this judgment, which was also levied on the same real estate in Race street. This levy, with a condemnation of the property, was returned to December term, 1820, of the supreme court. Under this levy and condemnation a venditioni was taken out in May, 1826, and the property sold by it, on the 17th of that month. On the 13th February, 1826, the insolvency of John Greiner was declared by a general assignment. The money received by the sheriff from the sale, was paid by him to the defendant, with the consent of the attorney of the United States, but without any waiver of their rights. The president of the Mechanics' Bank, on receiving the money from the sheriff, signed an agreement to which the United States do not appear to be a party, which recites the sale of the property, and the claim of the United States; "which claim is resisted by the Mechanics' Bank, and the point is to be adjusted by the court, out of which the venditioni issued, on a case to be stated." It is then agreed that "if the said court shall decide that the United States are entitled to be paid the amount of their claim out of said money, then the Mechanics' Bank agree to pay to the United States the amount of their said claim." No case ever was stated for the opinion of the supreme court of Pennsylvania, the court out of which the venditioni issued, nor does any movement appear by either of the parties to carry that part of the agreement into effect; but this suit was brought, in' this court, by the United States, to try, in this way, the validity of their claim to the money in question. The declaration calls for money had and received for the plaintiffs' use, for money lent and advanced, and on an account stated, and a verdict has been rendered by consent for the plaintiffs, subject to the opinion of the court on the whole case.

The defendant raises two objections to the right of recovery: 1. That no assumpsit, express or implied, exists between these parties, to maintain the suit. 2. That the United States have no right to the money, either on the ground of the insolvency of John Greiner, nor by reason of any laches on the part of the Mechanics' Bank, in proceeding upon their judgment.

1. I am not inclined to sustain the first objection. Money paid by A. to B., to be by him paid to C., will support an action by C. against B. for money had and received to his use; although there was no promise, or direct privity, between C. and B. This is equitably and substantially our case. The money in question was locked up in the hands of the sheriff. By the consent of the United States, without which the defendant could not have received it, and which raises a consideration between them for the promise now asserted, it was paid by the sheriff to the defendant, not thereby changing the property, or the rights of the parties to it, but to be a deposit there, as it would have been in the

hands of the sheriff, for the party who should finally be proved, judicially, to be entitled to it. It is true, in the receipt or agreement given to the sheriff by the Mechanics' Bank, the manner of obtaining a legal decision of the difference is mentioned; but it is not of the essence of the matter; it was never pursued by either of the parties; nor, as far as appears here, ever assented to by the United States. It is said that the United States may have their remedy against the sheriff; but how can this be, when it is agreed here at the bar, by both parties, that the sheriff paid the money to the Mechanics' Bank, with the assent of the United States? This action has a very broad and equitable range; the money in question is admitted to be in the hands of the defendant; it is admitted that he received it under a promise to account for it to the United States, if it should prove to belong to them; the bank received it from the sheriff, knowing of the claim of the United States; knowing this they gave up none of their rights to it, by consenting to its being transferred from the hands of the sheriff to theirs. I can therefore see no objection to their following their right and their property, into the hands, into which it has come under these circumstances.

2. The substantial matter of controversy between these parties is found in the second point. No claim is made by the United States, to be preferred to the defendant under the provisions of the act of congress, giving priority of payment to the United States, in certain cases. Indeed no such claim could have been supported. The supreme court of this state, has decided in the case of Wilcocks v. Waln, 10 Serg. & R. 380, that "if the property of the debtor has been seized under a fieri facias, the property is divested out of the debtor, and cannot be made liable to the United States." This is in entire conformity with the decisions of the supreme court of the United States. The only question then is whether the Mechanics' Bank have lost the preference, which the priority of their judgment would give them, by any laches, so as to let in the judgment of the United States before them. The effect of an execution, levied on real estate, to continue the lien of the judgment, under which it was issued, in full force and life, has several times been under the consideration of the supreme court of this state; and with direct reference to the act of assembly requiring a revival of judgment, by scire facias, every five years, to keep up the lien.

It has been uniformly held, that the taking out a fieri facias, levying it on the lands of the defendant, and condemning them by an inquest, all of which were done by the Mechanics' Bank without delay, and several years before the judgment of the United States, in this case, are sufficient without a scire facias to keep the judgment alive, and to preserve the lien on the real estate, thus proceeded against. A short review of the

cases will show this to be the established and unquestioned law of Pennsylvania. In the case of Young v. Taylor, 2 Bin. 228, it was objected that the judgment had not been revived within five years, according to the act of assembly, but it was held by the court, that the taking out a fieri facias, levying on the goods and lands of the defendant, and condemning the lands by an inquest, was notice tantamount to a scire facias under the act; and sufficient to preserve to the party the full lien and benefit of his judgment. In the case of Cowden v. Brady, 8 Serg. & R. 505, the contest was between one Haye, a creditor of Brady, who had a judgment in the county, where the land lay, and one Cowden, who had a prior judgment in another county, but had issued a testatum fieri facias to the county in which the land was situated, which testatum was not followed up by a sale, but "grossly neglected" for several years. The judgment of Cowden was in July, 1807; his testatum fieri facias issued to August term, 1809, and was levied, and the land condemned. It remained dormant from that time until 1813; and again from 1813 to 1816. The proceedings under this execution being returned to the court from which it issued, which was not in the county where the land lay, no notice of them was legally or actually given to any body. Haye's judgment was entered in March, 1811; it was regularly and promptly followed up, and the land in question was duly sold under it, by a venditioni returnable to March term, 1814. The deed to the purchaser at this sale was acknowledged in June, 1814; and the purchaser took possession accordingly. More than two years after this sale, to wit, in April, 1816, the land was again sold by a venditioni under Cowden's judgment. Here the question of preference was, between a judgment in the county of the land, binding it with record notice to all the world; and a fieri facias on a judgment in another county, put into the hands of a sheriff, and there neglected for several years; indeed for two years after the vigilant creditor had sold the land, under regular process to a bona fide purchaser, whose rights and possession were invaded by an ejectment on a title derived from this second sale. In such a case the court could not hesitate to prefer the judgment of Haye; at the same time recognizing the doctrine, that with due notice of the judgment and levy, in the county where the land lies, the creditor may safely indulge his debtor, by a postponement of an actual sale of his land. In the case of Com. v. McKisson, 13 Serg. & R. 144, Judge Duncan delivering the opinion of the court, says, "This is a question of immense importance. It is whether an execution returned 'Levied on land,' falls within the provisions of the act limiting the time, during which judgments shall remain a lien on real estate." The judge examines, with great care the act of assembly, and the adjudged cases bearing on the point; and in conformity with them,

and the received opinion and practice of the bar, decides, that a levy on particular lands, preserves the lien of the judgment; and that no scire facias is necessary to keep it alive. It cannot therefore be superseded by a subsequent judgment, or any proceedings under it, "unless such a length of time had elapsed as that, by analogy to the statute of limitations, a presumption of satisfaction would arise." In the case of Dean v. Patton, 13 Serg. & R. 341, Canan had two judgments against Clarke; one prior to Davidson's mortgage, the other subsequent to it; writs of fieri facias were issued under both judgments, and returned levied on personal estate. Canan and Clarke made an arrangement to apply the proceeds of the sale of the personal estate, not to pay Clarke's first judgment, but the last, in order that the proceeds of the real estate might be taken to satisfy his first judgment, and cut out the mortgage creditor; under such circumstances, the court would not allow Canan and Clarke thus to manage the matter between themselves, to the injury of Davidson. As Canan had levied the execution of his first judgment on the personal property of the debtor, he was not permitted to withdraw it, and take for it the proceeds of the land sold by the mortgagor. The principal point of this case has no bearing on that now before the court; nor is there any incidental observation made by the judges, that is not in conformity with the principles of the cases above cited.

No cases have been produced by the district attorney, impeaching or questioning the law as given above. He insists that a man should not be suffered, by issuing a fieri facias and levying it, and keeping it for ever, to hold all other creditors off. No such consequence will follow, as it never has been doubted in Pennsylvania, that a later judgment may go on to the sale of the land, without impediment from an earlier judgment; and although it was long unsettled, it has at last been adjudged, in the case of Com. v. Alexander, 14 Serg. & R. 257, that a purchaser at sheriff's sale, under a judgment, does not take the land subject to a previous judgment, obtained against the former owner of the land, unless it was sold expressly, subject to such prior judgment. The land being thus sold, clear of the incumbrance of earlier judgments, will bring its full value; the proceeds are distributed according to the priority of the liens, and no wrong is done to any body. I will add, that when a statute, in peremptory and unequivocal terms, requires a notice of a special description, given and prescribed by the statute, I should not be inclined to receive any substitute, because I might deem it equally good and effectual for the purposes of the statute. But the practice of admitting what are called tantamount notices, has obtained too firm a footing in the courts both of this country and England, to be now shaken without danger. I have long doubted whether, if these steps could

be retraced, they would be again adopted. If they have accomplished the equity of particular cases, it has been at the expense of certainty in all; and perhaps not without some usurpation of legislative authority. There is, however, no instance, in which it may be better justified, than in the decisions of the courts of Pennsylvania, on the matter here in question. It is my opinion, that the verdict rendered in this case for the plaintiffs, be set aside, and a judgment entered for the defendant.