Case 101—PROSECUTION AGAINST THE H. A. THIERMAN
CO. FOR VIOLATING AN ACT TAXING THE SALE OF
BLENDED SPIRITS, NOV., 16.

## Thierman Co. v. Commonwealth.

Appeal from Franklin Circuit Court.
R. L. STOUT, Circuit Judge.
Defendant convicted and appeals.  Reversed.

Revenue and Taxation—Tax on Rectified Spirits—Act Originating
in Senate—Constitutionality of Act—An act of the General As-
sembly of Kentucky approved March 24, 1904, with the fol-

lowing title: "An act relating to revenue and taxation, pro-
viding for license taxes on compounded, rectified, adulterated
or blended spirits, known and designated as single stamped
spirits, and providing penalties for a violation of its provi-
sion," and providing a tax of fifty cents on each barrel of
such spirits so compounded, rectified, adulterated or blended,
and requiring those so engaged to report under oath to the
Auditor the quantity so compounded, and pay him the tax
thereon every six months, in default of which the offender
is subject to indictment and a fine of $500.00," is a bill having
for its primary object the raising of revenue; and said bill
having originated in the Senate, is in violation of Sec. 47 of
the Constitution of the State, which provides that "all bills
for raising revenue shall originate in the House of Represen-
tatives."

W. O. BRADLEY, for appellant.

KOHN, BAIRD & SPINDLE and HUMPHREY, HIMES &
HUMPHREY, of counsel.

### CLASSIFICATION OF POINTS AND AUTHORITIES.

1.  All acts for raising revenue must originate in the House of
Representatives. (Section 47 Constitution of Kentucky.)

2.  The police power is not without limit, and in its exercise
no fundamental right can be invaded. An act not for regulation
can not be sustained by invoking the police power. Nothing
can be obtained under the mere guise of the police power im-
properly exercised. (Sections 1273, 1905a, 2200, Kentucky Stat-
utes; Cooley Const. Lim. (4th Ed.) 719; Com. v. Alger, 7
Cushing, 53; Austin v. Murray, 16 Pick., 121; Watertown v.
Mayo, 109 Mass., 315; Slaughter House Cases, 16 Wall., 36; Coe
v. Shultz, 47 Bar, 64; Matter of Rogers, 72 N. Y. 1; Town Lake-
view v. Rose Hill Co., 70 Ill., 191 s. c. (22 Am. Rep., 71;)
Matter of Jacobs, 98 N. Y., 98 ("50 Am. Rep., 636, 643-644;")
Weismer v. Village Douglas, 64 N. Y., 9150 "21 Am. Rep., 586";
Stuart v. Palmer, 74 N. Y., 183; People v. Equitable Trust Co.,
96 N. Y., 387; Rockwell v. Nearing, 35 N. Y., 302; Matter of
Townsend, 39 N. Y., 171; Matter of Deansville Cemetery, 66 N.
Y., 569; Matter Eureka Basin Warehouse Co., &c., 96 N. Y.,
142; Legal Tender Cases, 12 Wall., 467; McCullock v. Maryland,
4 Wheat., 316 Hepburn v. Griswold, 8 Wall., 603; Legal Tendes
Cases, 12 Wall., 467.)

3.  An act primarily for both revenue and regulation, with

former its primary object, is an act to raise revenue. (Cooley's Taxation, chap. 19, p. 396.)

4.  A license is exacted before doing business and may be forfeited.   No such requirement under present laws.   (Kentucky Statutes, Secs. 4203-4-5-6-7-8-15; Acts of 1904, p. 255.)

W. A. BYRNE, for appellants.

POINTS RELIED ON BY APPELLANT FOR REVERSAL.

1.  The Act of March 24, 1904, was not passed under the Police Powers of the State; it was not intended to regulate the business taxed, but to raise a revenue therefrom.

2.  There can be no obligation upon the part of Appellant to make the report, as a matter of regulation merely; the report is designed only for the purpose of ascertaining the amount of tax to be paid by Appellant.

3.  If the act fails as a Revenue Measure, the purpose of the report fails, and there is no offense committed in disregarding it.

4.  The Act is unconstitutional because:

(a)  Being a bill for raising revenue, it should have originated in the House of Representatives, according to Section 47 of the Constitution.   The bill originated in the Senate.  。

(b)  It is double taxation—because Act of June 17, 1902 obliges Appellant to pay tax on its business.

(c)  It discriminates against resident business, in favor of the same business owned by non-residents.

(d)  It discriminates in favor of large dealers against small dealers.

(e)  It violates Section 171 of the Constitution—disregarding uniformity.

(f)  It violates Section 2, Bill of Rights, because the tax is oppressive and amounts to spoliation.

AUTHORITIES CITED.

American & English Encyclopaedia of Law 2d. Ed. Vol. 22, 916, 917 and 918; Dunn v. Commonwealth (Ky.) 49 S. W. Rep. 813; Long v. State 27 Ala. p. 32; Arkadelphia Lumber Co. v. Arkadelphia, 56 Ark. 370; Peoples v. E. Martin, 60 Cal., 153; In re Guerrero, 69 Cal., 88; The Board of County Commissioners of Kiowa County v. Dunn, &c., 21, Colo. 185; State ex rel Beek v. Wagener, 77 Minn., 483; City of St. Louis, v. Knox, 6 Mo., 247; Commonwealth v. Bailey, 81 Ky., 395; Rankin v. City of Henderson, 9 Ky., Law. Rep. 861; Commonwealth v. Fowler, 28 S. W. Rep. (Ky.) 786; Livingston v. City of Paducah, 80 Ky.

Thierman Co. v. Commonwealth.

656; Howell v. Bristle, 9 Bush, 493; Chesney v. Hooser, 9 B. Mon. 330.

N.  B.  HAYS, Atty. Gen'l. and CHAS.  H.  MORRIS, for appellee.

## POINTS AND AUTHORITIES.

### DIFFERENCE IN ACTS.

The Act of March 24, 1904, imposes a license tax or fee on the business or occupation of compounding, rectifying, &c.

The Act of March 29, 1902, imposes a license tax on the business or occupation of wholesaling such rectified liquors.

These two occupation are different and distinct occupations, and are both subject to a license tax.  They are so held and considered in the United States Statute, to be subject to separate and distinct licenses, under the Internal Revenue Laws.

"The payment of a special tax as a rectifier, does not relieve any person from the payment of the Special tax as a wholesale dealer on account of sales of spirits, whether the same be of his own rectification or otherwise." (United States Compiled Statutes [1901] Volume 2, page 2094, Section 3242; United States Compiled Statutes [1901] Volume 2, page 2096, Section 3242; Also see "No. 7, Revised, April 15th, 1901, United States Internal Revenue Regulations and Instructions concerning tax on Distilled Spirits under the Revised Statutes of the U. S. and subsequent Acts." Black on Intoxicating Liquors, Section 123; State v. Newcomb, 107 N. C., 900; State v. Gahon, 35 Md., 236; Schumm v. Village of Gardner, 25 Ill. Ap. 633.)

### BILLS FOR RAISING REVENUE.

Bills for raising revenue, within the purview of Section 47 of the Constitution, are bills imposing taxes on the people for the support of the Government, in consideration of the common protection of their lives, liberty and property.

They receive no special privilege or advantage by reason of such payment, other than such common protection.

It is the contention of the State that such laws as the Act of March 24, 1904, do not come within the inhibition of the Constitution.  That while they may operate to incidentally turn money into the Treasury, by reason of the license tax imposed, it is not paid by those engaged in the business for the common benefit of the Government, but for the privilege and advantage of conducting a business, from which all who do not pay said license tax are excluded.

If this contention be correct, then it does not matter which branch of the Legislature originated the bill. (Commonwealth v. Bailey, 81 Ky., 399; Schumm v. Village of Gardner, 25 Ill., Ap. 636; Pleuler v. State, 11 Neb., 570; State v. Bixman, 162 Mo., 1; Rankin v. City of Henderson, 9 R., 861.)

## RIGHTS AND IMMUNITIES OF RECTIFIERS AND BLENDERS.

(a) The business of compounding, rectifying, adulterating or blending distilled spirits is not a natural right, but is a privilege which the State may prohibit altogether, or may permit under prescribed terms and conditions. (Black on Intoxicating Liquors, Section 82; in re Hoover, 30 Fed. Reporter, 51; Balemeyer v. Iowa 18 Wall 129; Meigler v. Kansas, 123 U. S., 623.)

(b) The occupation of rectifier or that of compounding or blending distilled spirits, is neither a liberty, privilege, an immunity nor a property right, secured either by the Federal or the State Constitutions. (Black on Intoxicating Liquors, Sec. 83; State v. Bixman, t168 Mo., 1; Boston Beer Co. v. Massachusetts, 97 U. S., 25; Stone v. Mississippi, 101 U. S., 814; Powell v. State, 69 Ala., 10; La Croix v. Commissioners, 50 Conn., 321.)

(c) The occupation of rectifying, blending and compounding, being neither a natural right nor a property right, and not being an occupation or business "which it is the right of the citizen to pursue, undisturbed by arbitrary legislative interference," whoever engages in such occupations, does so under such disadvantages as may be prescribed by the law making power which authorizes it. (State v. Luddington, 33 Wis., 107; St. Louis & M. R. R. Co. v. City of Kirkwood, 60 S. W., 113; State v. Bixman, 162 Mo., 1; Powell v. Pennsylvania, 127 U. S., 678; Reymann Brewing Co. v. Brislen, 179 U. S., 269.)

## REGULATIONS UNDER POLICE POWER, AND TAXES FOR

### THE PURPOSE OF RAISING REVENUE,

### DISTINGUISHED.

It is the contention of the State that said Act of March 24th, 1904 is an Act to regulate, and not for the purpose of raising revenue. The House and the Senate, within the limitations of the Constitution, are equal in dignity and power, and unless it clearly appears that said bill is unconstitutional, and one for raising revenue, it will be held valid.

If one interpretation will uphold its constitutionality, and another render it unconstitutional, the Courts will uphold the Act.

We admit that the bill originated in the Senate, but we say it is not a revenue measure, but an exercise of the police power. (A. & E. Encyclopaedia of Law 2nd Ed. Vol. 21, 745; State v. Bixman, 168 Mo., 1; Commonwealth v. Bailey, 81 Ky., 399; Robinson v. Commonwealth, 101 Ky., 287; State v. Wright, 14 Oregon, 365.)

OPINION BY JUDGE LASSING—Reversing.

The General Assembly passed the following act, which was approved March 24, 1904:

"An act relating to revenue and taxation, providing for license taxes on compounded, rectified adulterated or blended spirits, known and designated as single stamped spirits, and providing penalties for violation of its provisions.

"Be it enacted by the General Assembly of the commonwealth of Kentucky:

"Section 1. That every corporation, association, company, co-partnership or individual engaged in this State in the busines or occupation of compounding rectifying, adulterating or blending distilled spirits, known and designated as single stamped spirits, shall pay to the commonwealth of Kentucky a license tax therefor.

"Sec. 2. The license tax imposed by the first section of this act shall be based upon the amount of distilled spirits compounded, rectified, adulterated or blended, viz: Fifty cents for each barrel so rectified, compounded, adulterated or blended distilled spirits, to be of standard measure. Twenty-five cents for each package containing less than one barrel of such compounded rectified, adulterated or blended distilled spirits.

"Sec. 3. It shall be the duty of each corporation, association, company, co-partnership or individual engaged in this State in the business or ocupation of compounding, rectifying, adulterating or blending

distilled spirits, known and designated as single stamped spirits, to make and deliver to the Auditor of Public Accounts, on the 31st day of December, 1904 (or within ten days), and at the end of each six months thereafter, a report, sworn to, showing the number of barrels, standard measure, and the number of packages containing less than one barrel, of compounded, rectified, adulterated or blended distilled spirits, known and designated as single stamped spirits, sold during the six months then ended, and at the same time pay into the state treasury, through the Auditor, the amount of taxes due the State, as imposed by this act.

"Sec. 4. Any compounder, rectifier or blender, liable for the taxes imposed by this act, or embraced by its provisions, who shall willfully fail or refuse to make and deliver to the Auditor sworn reports required by section 3 of this act, shall be deemed guilty of a misdemeanor and upon conviction, shall be fined five hundred dollars ($500) for each offense, to be recovered by indictment in the Franklin circuit court.

"Sec. 5. The provisions of this act shall apply only to such corporations, companies, associations, co-partnerships or individuals actually engaged in compounding, rectifying, adulterating or blending distilled spirits.

"Sec. 6. All acts and parts of acts inconsistent or in conflict with this act are hereby repealed."

See acts 1904, p. 255, c. 104.

Appellants failed to file the reports with the Auditor as required by the act, and, being indicted therefor in the Franklin circuit court, demurred to the indictment, and, their demurrer being overruled, excepted. They pleaded not guilty, and, the case being heard and judgment having been entered against them, they appeal.

The chief ground for reversal is that the act is

unconstitutional, because it is shown, by the clerk's memorandum thereon and by the legislative journals, it originated in the Senate. Section 47 of the Constitution of the State is as follows: "All bills for raising revenue shall originate in the House of Representatives, but the Senate, may propose amendments thereto; provided, no new matter shall be introduced, under color of amendment, which does not relate to raising revenue." This is practically the same as section 30, Art. 2, of the third Constitution, section 29, Art. 2, of the second Constitution, section 26, Art. 1, of the first Constitution, and section 7, Art. 1, of the Constitution of the United States. Thus the law now is, and has ever been, not only in this State, but in the United States, that all bills for raising revenue shall originate in the House of Represenatives. It is admitted that the bill in question in this case originated in the Senate. It follows that if it is a bill for raising revenue, or if it has the two-fold purpose of raising revenue and incidentally to regulate the business from which the revenue is derived, with revenue as its primary purpose, it is in violation of the provision of the Constitution, and is therefore unconsitutional and void. If, on the other hand, its purpose is to regulate the manufacture and use of rectified spirits, with revenue as a mere incident, then it is not in violation of the Constitution, and should be upheld.

An analysis of the bill itself should determine the purpose for which it was enacted. Section 51 of the Constitution provides: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title; and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length." The legislators, in conformity with the requirements of this section of the Constitution, styled

the bill in question "An act relating to revenue and taxation, providing for license taxes on compounded rectified, adulterated or blended distilled spirits, known and designated as single-stamped spirits, and providing penalties for violations of its provisions." They evidently intended it as a measure the primary object of which was to raise revenue, for they so state in the title of the bill. But, passing from the title to the bill itself, it provides that every one engaged in the business of rectifying, compounding, adulterating, or blending distilled spirits shall pay to the commonwealth a license tax therefor; that the tax shall be 50 cents for each barrel so rectified, compounded, adulterated, or blended, and 25 cents for each package thereof containing less than one barrel; that the rectifier shall report under oath every six months to the Auditor of Public Accounts, and for a failure to so report he shall be subject to a fine of $500 for each offense. The tax imposed is not upon the manufacture but it is upon the sales as shown by the report. For what purpose is this report required? Manifestly, for the purpose of determining the amount of tax to be paid into the State treasury. It could serve no other purpose, unless it be said that it was required for statistical purposes. We do not believe that the Legislature had in view such a purpose in providing that such report should be made, but that its real purpose was to enable the Auditor to determine the amount of taxes due the State. The act does not in any wise seek to control the volume of business done, or the right to conduct the buisness; nor does it impose any penalty for conducting the business, or for a failure to pay the tax. The bill does not seek to control the quality of the manufactured product, or in any wise to regulate its sale; but the State, through the provisions of this bill, is seeking but one purpose, that of collecting a tax upon the volume of the business done by the rec-

tifier.  He may make any kind of liquor he chooses,
good  or bad.  He may sell in any way he can, to any
person able to buy, and in any quantity, and in these
particulars the State has no interest whatever, so far
as this bill is concerned.   Through this bill the State
says to the rectifier:  "You must pay a tax of 50 cents
upon each barrel of spirits, and pay 25 cents upon each
package of spirits less than a barrel, which you sell;
and, for the purpose of determining the number of
barrels and packages sold, you are required to report
under oath to the Auditor of Public Accounts every
six months the number of said sales.  A penalty is
imposed upon you for failure to make this report."

Appellee insists that, while it is true that the bill
raises revenue, this is an incident merely, and that the
primary purpose of the bill is to regulate the business
of the rectifier, and, being such, was not passed in
violation of section 47 of the Constitution, and is, as
a police regulation, in full force and effect.  We are
aware that the police power of the government has
been, for the good of the public, so extended that it
now covers a much broader field than formerly; that
it can be so extended in its scope as to reach and affect,
not only large interests, in which many are engaged,
but small concerns as well.  In extending its power
and broadening its field of operations, one main object
is sought to be attained—one purpose is kept in legis--
lative view:  The betterment of society; the advance-
ment of the public good; to secure to the individual cit-
izen all his constitutional rights. No police regulation,
we take it, will ever be exercised over any business
which does not in some way affect the general
public  or  the  private  citizen  in  the  enjoyment
of  their  constitutional  rights,  But  that  regula-
tion  comes  only  in  those  cases  where  the  busi-
ness  itself,  or  the  product  which  it  manufac-
tures,  is  calculated to  take  from  the  public  the

rights guaranteed by the Constitution, or to disturb the  public in the enjoyment of these rights; and in such cases the bill thus regulating must, and does, throw around the business those restrictions and regulations under and through which it may  be conducted. For instance, a bill to regulate the operation of a fertilizer factory or a powder mill would confine them to a territorial limit where the population was small; in the one case because the odor arising  from the material used in the manufacture of its goods would be offensive, if not injurious, to the  people living near, and in the other case because the danger from explosion of the product manufactured would be a  constant menace to the lives of those living in the vicinity of the mill.  And, while a bill regulating either  of the above businesses    would   not    designate    the    place    or places    where ·  they    might    be    operated,    it would    designate    the    character  of  place  where they    might    not    be    operated.  In    other    words, a    bill    by    which    it    was    proposed    to    regulate the operation of fertilizer factories or powder mills should, and would, set forth the particulars in which the government proposed to regulate the business.  And so it is with all measures which have been held to be police regulations.  They define the limitations thrown around the business sought to be regulated.  As for example, acts to regulate the retailing of liquors:  The applicant,  before he may engage in the business, must give notice by publication in a certain way, must successfully meet any objection coming from the "neighborhood" where the business is proposed to be conducted, must show himself a fit and proper person to conduct the business, and must, in some cases, show that he is prepared to entertain the traveling public in a proper and reasonable manner. These and kindred regulations are, and properly may be, required; but in each instance the bill sets forth ex-

plicitly the regulations or rules under which the business may be conducted, and the rules and requirements with which and to which the applicant must conform before he can engage in the business, and when he has complied with the requirements, he receives a license or authority from the government, or granting power, showing that he has complied with the provisions of the law.

Appellee has cited numerous authorities of this and other States illustrative of the extent to which the police power of the State has been carried by legislative enactment. But he has not cited any authority in point in which the law in question did not require the granting of a license as a condition precedent to engaging in the business; such as the sale of liquor by retail or by barrel-house men, the peddling of goods, the operation of foreign insurance companies through local agents, and the licensing of lawyers, The courts have held, and we think properly so, that all such acts are police regulations, and the revenue derived from their enforcement is a mere incident—the main purpose and object of the acts in question being the protection of the people in their health and morals, and against impostors and fakes; and in each and every instance there was required, as a condition precedent to engaging in the business, the payment of a license fee and the granting of a license, as an evidence to the public that the holder had complied with the requirements of the law. It is this feature which requires of the applicant compliance with certain rules and regulations as a condition precedent to engaging in any particular line of business that is characteristic of all the measures which may properly be designated as police regulations. Mr. Justice Story, in United States v. Mayo, 26 Fed. Cas. 1231, thus lays down the rule for determining a revenue bill: "The true meaning of revenue laws in these clauses is such

laws as are made for the direct and avowed purpose of creating and securing revenues or public funds for the services of the government." And in United States v. James, 13 Blatchf. 207, 26 Fed. Cas. 577, the rule is thus stated: "Certain legislative measures are unmistakably bills for raising revenue. These impose taxes upon the people, either directly or indirectly, or lay dues, imposts, or excises for the use of the government, and give to the persons from whom money is exacted no equivalent in return, unless in the enjoyment, in common with the rest of the citizens, of the benefit of good government. It is this feature which characterizes bills for raising revenue. They draw money from the citizen. They give no direct equivalent in return."

Tested by these rules, which are sound in principle, the bill before us cannot be regarded in any other light than as a bill for revenue. It does not seek to regulate in any way, shape, or form the manufacture or sale of liquor. It seeks nothing of the manufacturer but the payment of the tax. The identical question raised in this case was passed upon by the Supreme Court of Alabama in Perry County v. Railroad, 58 Ala. 546. In that case the bill was entitled: "An act to amend an act entitled 'An act to establish revenue laws for the state of Alabama.'" The Constitution of that state was practically the same as the Constitution of this State, in that it required that all bills for raising revenue should originate in the House of Representatives, but that the Senate might amend or reject them, as other bills. It was contended in that case that a bill to amend a revenue act or system of laws in existence was permitted by that part of the Constitution which confers upon the Senate the power to amend or reject a revenue bill. But this contention was denied by the court, and, after reviewing the history of like constitutional provisions, the

court said: "We think the only safe rule for inter-
preting clauses of the Constitution which command
certain things to be done or certain methods to be
observed in the enactment of statutes is to hold that,
when it is affirmatively shown by legal evidence that
in the attempt to legislate some mandate of the Con-
stitution has been disregarded, such attempt never
becomes a law." And continuing in that case:
"These provisions clearly show that the law we are
considering was one to raise revenue; and, as the
bill originated in the Senate, it is unconstitutional,
and never had a legal existence."

It is insisted by appellee that it is a delicate duty
for the court to declare an act unconstitutional; that,
in case of doubt, the doubt should be resolved in favor
of the validity of the act in a case of this sort; that, if
the House had deemed the act an infringement of its
prerogative, it might have refused to consider it when
it came to it from the Senate; that, if the Governor
had deemed it unconstitutional, he might have vetoed
it after it had passed both houses; and that after the
act has been concurred in by both houses, and has been
approved by the Governor, if there is any construction
of it, which may reasonably be adopted, rendering it
constitutional, that construction should be followed.
This is true. A legislative act should never be held
unconstitutional, if its validity can be, by any reason-
able construction, upheld. But, in the case before us,
the only construction that can be given the act in
question is that it is an act for revenue, pure and
simple; and, originating, as it did, in the Senate, it
was passed in violation of the plain provision of the
Constitution.

As the case must be reversed for this cause, we do
not deem it necessary to pass upon the other ques-
tions raised upon this appeal.

For the reasons given, the judgment is reversed,

with instructions to the trial court to sustain the demurrer to the indictment.