## Lang, Judge v. Commonwealth.

(Decided December 14, 1920.)

### Appeal from Franklin Circuit Court.

1. Statutes—Subjects and Titles of Acts.—An act of the general
   assembly which has but one subject, and that is expressed in its
   title, and all the provisions of the act have a natural connection
   with the subject expressed in the title, is in conformity with
   the requirements of section 51, of the Constitution.
2. Statutes—Enactment, Requisites and Validity in General.—Bills
   for raising revenue, as mentioned in section 47, of the Constitu-
   tion, are bills for the levying of taxes, in the strict sense, and a
   statute, the requirement of which may incidentally cause the
   collection of revenue, is not void, because it has its origin in the
   senate.
3. Taxation—Equality and Uniformity.—The uniformity in taxation
   required by section 171 of the Constitution means that the taxes
   levied must be uniform and equal upon the taxable property of
   the unit of taxation, in which the taxes may be lawfully levied.
4. Reformatories—Maintenance of Houses of Reform by Counties.—
   Under section 252 of the Constitution. the legislature is within
   its authority to require each of the counties of the state to main-
   tain the inmates of the house of reform, who may be sentenced
   to confinement there from the county.
5. Criminal Law—Inmates of House of Reform.—Section 254 of the
   Constitution does not apply to inmates of the house of reform,
   but to persons convicted of felonies, under the regular admin-

istration of the criminal laws of the state, and sentenced to confinement at hard labor in the penitentiaries.

6.  Courts—County Courts Without Jurisdiction in Felony Cases.— The county courts of the respective counties of the state, have no jurisdiction to try or convict any one of a felony or misdemeanor.

7.  Infants—Juvenile Delinquents.—The offense designated by law of which a county court may convict a male child seventeen years of age or under, or a female child eighteen years of age or under, is that of being a delinquent as described by Section 331e, subsection 1, Kentucky Statutes, and such child the county court may in its discretion sentence to confinement in the house of reform.

8.  Infants—Juvenile Delinquents.—The child which may be indicted upon a charge of guilt of a felony, as mentioned in chapter 26, Session Acts, 1914, is one, who on account of its offenses, and characteristics, when, having been brought before the county court, the latter court has in its discretion transferred to the circuit court to be proceeded against in accordance, with the adminstration of the criminal laws of the state, and who, if convicted of a felony, will be sentenced by the circuit court.

9.  Reformatories—Juvenile Delinquents.—The inmates of the house of reform, whose maintenance to the extent of $100.00 per year, the counties are required to provide; are the children over ten years of age and under sixteen years of age, and who have not been transferred to other proper courts, by the county courts, to be proceeded against under the general criminal laws of the state, but, who are convicted of being delinquents, by the county courts, and sentenced to confinement in the house of reform.

W. V. EATON for appellant.

CHARLES H. MORRIS, Ex-Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

An act of the General Assembly, which was approved March 17, 1914, is as follows:

"An act to further regulate the admission of inmates to the House of Reform.

"Be it enacted by the general assembly of the Commonwealth of Kentucky:

"1. No child under the age of ten years shall be sentenced to or confined in the school of reform, or any state penal institution.

"2. When any child over ten years of age and under sixteen years of age shall be sentenced to, and confined in, the house of reform, the expense of conveying said child to the house of reform shall be paid by the county

from which sent, and said county shall pay for the maintenance of such child $100.00, annually, which sum shall be payable into the state treasury, in monthly installments, at the end of each month. It shall be the duty of the county judge on the last day of each month, by written order, to direct the treasurer of the county, or the person acting as treasurer, to forward to the auditor of public accounts the amount due, under the provisions of the act. If any county shall make default in payment of any sum due under the provisions of this act, the auditor may institute suit against such county for the recovery of the amount due in the Franklin circuit court. The provisions of this section shall not apply when the child so sentenced has been indicted upon a felony charge.

"All laws and parts of laws in conflict with this act are hereby repealed."

After the enactment of the foregoing statute, a considerable number of children between the ages of ten and sixteen years, and who had not been indicted upon any felony charge, were sentenced to and confined in the House of Reform by the county court of the county of McCracken, but, the judge of that court refused to make any order directing the treasurer of the county, or the person acting as treasurer, to forward to the Auditor of Public Accounts, at the end of each month, the amount due under the provisions of the statute for the maintenance of such children. On the 16th day of November, 1918, this action was instituted by the Commonwealth of Kentucky upon the relation of the then Auditor of Public Accounts against the judge of the county court of McCracken county to require him to make a written order directing the sum then due, under the act from the county, to be paid by the treasurer and transmitted to the Auditor of Public Accounts. The county judge resisted the relief sought, upon the grounds, hereinafter considered, but, the action resulted in a judgment which sustained a demurrer to the statement of each of the grounds of defense relied upon, and the appellant declining to further plead, a judgment was rendered granting the entire relief sought in the petition. From that judgment, the present appeal has been prosecuted.

The action by the Commonwealth of Kentucky upon the relation of the Auditor of Public Accounts, is entirely predicated upon the provisions of the above quoted enactment of the General Assembly, but, its validity is

assailed upon several grounds, either of which, it is claimed, renders it void, because in contravention of the provisions of the Constitution. It is insisted that the statute is in violation of the Constitution and void, for the following reasons:

(1) The second section of the act is in violation of section 51.

(2) The second section of the act violates section 47 of the Constitution, in that it is a statute for raising revenue, and had its origin in the senate, instead of in the house of representatives.

(3) The second section of the act violates section 171, of the Constitution, which requires uniformity and equality, in taxation.

(4) The act violates section 254, of the Constitution by the terms of which the Commonwealth is required to provide all supplies for convicts.

The objections to the statute, based upon its constitutional invalidity will be first considered, because if the act is void, for being in violation of any constitutional provision, the action must be determined for appellant, without further question.

(a) The contention, that the General Assembly failed to observe the requirements of section 51, of the Constitution in the enactment of the statute, is not tenable. That section of the Constitution provides, as follows: "No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length." It will be observed, that the act, under consideration, is not an amendment of any other statute, nor does it pretend to amend, revise, extend or confer the provisions of any other statute by reference to the title of such statute only, and hence the second inhibition in the section of the Constitution, *supra,* can have no application to this statute. It is, however, insisted that the subject matter dealt with in the second section of the act is not germane to the subject expressed in the title, and is foreign to it, and for such reason, it violates the constitutional provision, wherein it is required, that a law enacted by the General Assembly shall not relate to more than one subject and that must be expressed in the title. It will be observed, that the subject of the

legislation expressed in the title, is the further regulation of the admission of inmates to the House of Reform. The first section of the act is a regulation of admission to the extent, that it prohibits admission of any child, who is under the age of ten years. The second section regulates the admission of children, who may be sentenced to the House of Reform, and who are over ten years and under sixteen years of age, and who have been sentenced to confinement in the House of Reform, without having been indicted for a felony, and therefore have not been convicted of a felony, in the regular administration of the criminal laws of the Commonwealth. The provisions of the second section of the act further regulate the admission of children over ten and under sixteen years of age, who are sentenced to confinement in the House of Reform, by providing, that the county from which such child is sent shall defray the expenses of conveying the child to the House of Reform, and shall pay $100.00 yearly, for its maintenance, and then it provides the time, when and the manner in which such sum for maintenance shall be paid into the state treasury, and imposed the duty upon the Auditor of Public Accounts to sue, if necessary, if the officials of the county fail to perform the duties required of them in paying into the treasury, the sum required by the statute. A statute can have only one subject, and that must be expressed in the title, but, the enactment which follows may contain any provision, which is germane to the subject expressed in the title—that is, to say, that is naturally connected with the subject, and not foreign to it. Williams v. Wedding, 165 Ky. 361; Com. v. Starr, 160 Ky. 260; Mark v. Bloom, 141 Ky. 474; McGlone v. Womack, 129 Ky. 274; Nunn v. Bank, 107 Ky. 262; Burnsides v. Lincoln Co. Ct., 86 Ky. 423; Conley v. Com., 98 Ky. 125; Live Stock, etc. v. Hager, 120 Ky. 125. The provisions complained of in the statute seem to fall within the limitations of the above stated rule.

(b) It is conceded that the act, under consideration originated in the senate, and hence, it is insisted that the section of it, which requires the county from which an inmate who is over ten and under sixteen years of age, and who has not been indicted for a felony, is sent, to pay $100.00 per year for the maintenance of such inmate, and the county judge at the end of each month to make an order upon the treasurer of the county, to forward to the Auditor of Public Accounts, the amount due,

is void, because in violation of section 47, of the Constitution, which provides, that "All bills for raising revenue shall originate in the house of representatives, etc. . . ." This section of the Constitution is in the constitution of the United States, and in some form or other in the constitution of nearly every state, and was borrowed from the British Constitution originally, where the reason for its adoption, also, originated, but, that reason is not very impressive in this country at the present time, as all the members of both the upper and lower houses of legislatures are elected by the people and answerable to them, but, whatever the reason for retention in our Constitution, its enforcement is incumbent upon the courts. It has received very little judicial consideration, but so far as that consideration has gone, the term "bills for raising revenue," to which reference is made in section 47, *supra,* is confined in meaning to such bills as are for the levying of taxes, in the strict sense of the word tax—bills which on their face are plainly designed to raise a revenue, and its meaning has not been allowed to extend to bills for other purposes, which may indirectly create a revenue. Northern Counties, etc. v. Sears, 30 Ore. 388; Perry Co. v. Selma, et al., 58 Ala. 546; U. S. v. Mayor, 1 Gall. 397; Thierman v. Com., 123 Ky. 740; Com. v. Bailey, 81 Ky. 395, 25 R. C. L. 878. That the statute in question does not impose directly any tax, is evident, though it may, incidentally make it necessary for the county authorities to levy taxes, to meet the requirements of the law.

(c)  It is insisted, that the second section of the act imposes double taxes, or at least imposes a burden of taxation which is unequal, as between the different counties of the Commonwealth, and therefore violates the uniformity and equality in the laying of taxes, which are guaranteed by section 171 of the Constitution. In support of this contention, the argument is advanced, that the taxable property of the county of McCracken has imposed upon it the same rate of taxation, as the property, in the other counties of the state for the support of the penal institutions of the state, including the House of Reform, and that in addition thereto, to impose upon the property of the county, an additional burden, in the way of maintenance of the class of persons designated in the act, destroys that equality in taxation, provided by the constitutional provisions, *supra.* That the burdens of taxation must be uniform, and to be uniform

must have the essential of equality, and must bear alike, upon all the property within the limits of the unit wherein it is lawful to levy taxes for a purpose, there can be no doubt, whether that unit be the state, county or a municipality. Eminence Distillery Co. v. Henry Co., etc., 178 Ky. 811; Spalding, Tax Collector v. Hill, 86 Ky. 656; Hager v. Walker, 128 Ky. 1. Can the requirements of the act, however work a taxation of the property, twice for the same purpose? The costs of the erection and maintenance of the House of Reform, and for the maintenance of all the inmates therein, who are above the age of sixteen years, and of all those under that age who have been indicted for felonies and suffered conviction under the regular mode of administration of the criminal laws, are borne by the Commonwealth and satisfied out of the revenues of the state, which are collected from assessments made upon all the taxable property within the state, and which are borne equally by the citizens irrespective of the counties, in which they reside or are taxed. The maintenance of the inmates, who are between ten and sixteen years of age, and who have not been convicted under indictments for felonies, to the extent of $100.00 per year, while detained, there, is, if paid into the treasury, by the counties as required by the act, paid by the counties through the medium of the state authorities but, the state exacts the cost for the maintenance of the latter class of inmates, to the extent that is provided by the act, but once, and hence, there is no taxation of the same property twice for the same purpose in any county of the state, as the other taxes levied and collected are not applied to such purpose. In the absence of any constitutional restriction, it is within the power of the legislature to require each county to maintain the inmates of the House of Reform, which its authorities sentence to confinement in such institution. In that state of case, the county for such purpose would constitute the unit of taxation for the maintenance of such of its citizens, as its authorities might consign to confinement there. If necessary to levy taxes for such purpose, it would be incumbent upon the taxing authorities of the county, to levy a uniform and equal taxation upon the taxable property within the county. Lexington v. McQuillan's Heirs, 9 Dana 513. There could be no discrimination between the counties, as each would bear a burden in proportion to the benefits it would receive from the correction and training of its citizens.

(d) It is, contended however, that sections 252 and 254, of the Constitution require the inmates of the House of Reform to be maintained by the Commonwealth, and hence the unit for taxation for that purpose would be the entire state, and the General Assembly is without power to require a county to maintain an inmate in such institution, because he was sentenced thereto from such county. Section 252, *supra,* is as follows: "It shall be the duty of the general assembly to provide by law as soon as practicable, for the establishment and maintenance of an institution or institutions for the detention, correction, instruction and reformation of all persons under the age of eighteen years, convicted of such felonies and such misdemeanors, as may be designated by law. Said institution shall be known as the House of Reform." It will be observed, that this section of the Constitution does not provide, in what manner the general assembly shall make provision for the maintenance of the inmates. It is left to the discretion of the legislature to adopt any constitutional method, it may select, for the maintenance of the inmates of such institution, and to provide the necessary funds for that purpose. Hence the statute, under consideration, so far as it requires a county from which the inmate is sent to contribute to his maintenance or rather to reimburse the state for so doing, does not conflict with the constitutional provision. It is contended, however, that section 254 of the Constitution requires the state to assume the entire burden of the maintenance of the inmates, of the House of Reform, and for such reason the lgeislature can not place any part of it upon a county. Section 254, is as follows: "The Commonwealth shall maintain control of the discipline and provide for all supplies, and for the sanitary condition of the convicts, and the labor only of convicts may be leased." The latter section of the Constitution, immediately follows section 253, which deals altogether with persons, who are convicted of felonies and sentenced to confinement in the penitentiaries, and provides for their confinement at labor within the walls of the penitentiaries, and under what circumstances such persons may be kept without the walls of the penitentiaries. We are of the opinion that section 254, *supra,* has no reference and is not to be applied, to the inmates of the House of Reform, but, applies to the persons convicted of felonies and sentenced to confinement in the penitentiary, as provided by section

253, *supra,* which in point of sequence was placed just preceding section 254, by the Constitution makers. A further reason is that section 252, makes provision for the maintenance of the inmates of the house of reform, by requiring that the general assembly "shall provide by law, for the establishment and maintenance of the House of Reform," and if section 254 had application to it, there would be two sections of the Constitution dealing with the same subject—the maintenance of the inmates of the House of Reform. Although section 253 dealt with the inmates of the penitentiary, it did not make any provision for their maintenance, and section 254 was necessary for that purpose, and unnecessary so far as concerned section 252.

The inmates of the House of Reform, for reimbursement for the maintenance of whom, this action was instituted were each of them found to be guilty of a felony or misdemeanor, by the county court sitting in its juvenile session, and the contention is made, that because of that fact, they were "convicted of such felonies and of such misdemeanors as may be designated by law," in the sense in which those terms are used in section 252 of the Constitution, and for that reason, the county can not be required to reimburse the state for their maintenance. The statute, however, requires the county to contribute to the extent of $100.00 per year, for the maintenance of such inmates as were not indicted for the commission of felonies, and that sum is all that is here sought. Nor can the county be relieved, because of those adjudged by the county court to be felons, as will hereafter be shown. The legislation required and permitted by section 252, *supra,* has made the purpose of the legislature somewhat confusing, but, by legislation, which was within its authority, it has designated the offense of being a "delinquent" child as the only offense, on account of which the county court, in its juvenile session, may sentence one to confinement in the House of Reform.

By section 331e, Kentucky Statutes, the legislature defined what should constitute a "delinquent child." One of the things which would make a "delinquent" was the violation of any law of this state. The section, also sets out many other things, chiefly sins of commission which would make a child who is guilty of them a "delinquent." Exclusive jurisdiction to deal with delinquent children was vested in the county court. Section 331e, sub-

sec. 2: Walter v. Com., 171 Ky. 457; Com. v. Davis, 169
Ky. 681; Talbott v. Com., 166 Ky. 659; Mattingly v. Com.,
171 Ky. 222. Before the county court, a child charged
with being a "delinquent" may be tried to determine
his or her guilt of any of the acts, which constitute the
delinquency. The county court may do so, without a
jury, or if a jury is demanded it may empanel one to
determine whether the facts exist, which make the child
a delinquent. When a proper charge is made, evidence
may be offered which proves the child to be guilty of a
felony or misdemeanor, but, not for the purpose of con-
victing the child of such felony or misdemeanor, but, as
evidence proving its delinquency. When a delinquent
child is brought before the county court, if in its dis-
cretion, the offenses of the child are such, that the court
is of the opinion, that it should be "proceeded against
in accordance with the laws governing the commission
of crimes," it shall dismiss the proceedings against it
as a delinquent, and transfer it to the court which has
jurisdiction of the crime or misdemeanor. Section 331e,
subsection 5. Without action of this kind on the part
of the county court, no other court has jurisdiction to
hear or determine a charge of a felony or misdemeanor
against any male child, seventeen years of age or under,
nor against any female child, eighteen years of age or
under. But, when jurisdiction is thus acquired by the
proper court, it may proceed to deal with the child, in
accordance with the criminal laws of the country. If
transferred to a circuit court, upon a felony charge,
the child may be indicted, and if convicted upon such
charge, and sentenced to the House of Reform, under the
law provided by the General Assembly, the state bears
the costs of his or her maintenance. If the county court
proceeds against a child before it, on the charge of de-
linquency, and such is established, the power of the
court is controlled and governed by subsection 7, of
section 331e, Kentucky Statutes, and the subsections of
that section pertaining to delinquent children, and one
of the things which the court may do, in its discretion,
is to sentence the child to confinement in the House of Re-
form, and it is such children sentenced for delinquency
to the House of Reform, that the act under consideration
requires the county from which he or she is sent, to con-
tribute to his or her maintenance. The act provides,
that the county can not be required to maintain an in-
mate of the House of Reform, who has been indicted for

a felony. A delinquent child, could not be legally indicted for a felony, except when he has been transferred from the county court to the circuit court, for trial upon a charge of felony and then, if convicted, the child is sentenced by the circuit court and not the county court. The county court has no jurisdiction to convict any one of a felony or misdemeanor, and the judgments in the instant case, were, in effect judgments finding the children to be delinquents and sentencing them to confinement in the House of Reform.

(e) A further contention is made, that the Auditor has no authority to maintain the present action, as the statute only authorizes him to sue a county and not a county judge. The statute, however, makes it the duty of the county judge on the last day of each month to make an order directing the treasurer of the county, or one acting as such, to transmit to the Auditor the sum due, and as the duty is imposed upon the Auditor of Public Accounts to receive and account for the sum for the Commonwealth, we think he is authorized to maintain an action in the name of the Commonwealth requiring the orders to be made which are necessary to enable the state by the Auditor to proceed against a county. The power of the county judge to make the orders allowing the sums due is vested in him by the statute, which also, makes it his duty to make the orders. Until the orders are made, the county would not be delinquent in paying.

The judgment appealed from is therefore affirmed.