CASE 63—RULE—NOVEMBER, 1882.

# The Commonwealth v. Bailey.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Each section of the act, entitled "An act to regulate the fees and salaries of certain public offices," *approved April* 9, 1880, is in harmony with its title, and therefore no part of the act is within the provisions of *section* 37, *article* 2, of the constitution.
2. The act is not an act "for raising revenue," and is not in conflict with *section* 30, *article* 2, of the constitution.
3. *Section* 20, *article* 13, of the constitution, has no application to any public officer, unless he is specially mentioned therein.
4. The act is constitutional.

L. C. WOOLFOLK AND JOHN. MASON BROWN FOR APPELLANT.
No brief.

CHAS. B. SEYMOUR, BYRON BACON, AND WM. LINDSAY FOR APPELLEE.

No brief.

·CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

This was a proceeding, in pursuance of an act of the general assembly, entitled "An act to regulate the fees and salaries of certain public officers," approved April 9, 1880, to compel the appellee, as marshal of the Louisville chancery court, to make a statement or report of all salaries, fees, emoluments, and perquisites received by him for services as marshal during that part of the year 1880 subsequent to the passage of the act.

The appellee's response to the rule against him contains the following statement:

"Respondent states that the act of April 9, 1880, upon which said rule is based, is unconstitutional, for reasons upon its face appearing; and not waiving the said objections, respondent further states that said act is a law for raising revenue, and that the said act originated in the Senate."

The court adjudged the response sufficient, and discharged the rule, from which this appeal is prosecuted by the State.

It appears from the opinion of the court below, and the arguments of counsel, that the appellee relied upon three grounds of objection to the constitutionality of the act.

We will state and dispose of these objections in the order made.

First, that it is in conflict with section 37 of article 2 of the constitution, which declares that "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title."

The general provisions of the act require certain public officers, including the marshal of the Louisville chancery court, annually, on the first Monday in January, to make and file with the clerk of the county court of their several counties a statement, under oath, of all fees, emoluments, salaries, and perquisites received by them for services, and of all salaries paid to their deputies or assistants, and of all other expenses incident to their offices, and to pay to the trustee of the jury fund all balance in their hands in excess of $3,000, which they are authorized to retain as compensation for the year reported.

The subject of the act is the regulation of the fees and salaries of the public officers enumerated in the first section.

Each section of the act has a natural connection with the rest, and embraces consistent parts of the general mode of regulating the fees and salaries of the officers named. The terms of the act are all directed to the regulation of such fees and salaries, and nothing else.

The title expresses, in plain and comprehensive language, the subject of the act which embraces the particular manner of accomplishing its object.

It is impracticable to state in the title the details, or particularize the subjects and means, which may relate to the main subject necessary and proper to be embraced in the body of the act (11th Bush, 76), and these need not, and, indeed, cannot, be expressed without embracing in nearly every act more than one subject in the title.

It is not necessary to enter into a philological discussion of the meaning of the words ''regulate,'' ''fees'' and ''salaries,'' as it is clear that the legislature used them according to their every-day and popular sense, and by their use intended to describe a law, the purpose of which was to

control, adjust, and limit the sums the officers named were thereafter to receive for their services as officials.

This construction is amply supported by the authorities Louisville and Oldham Turnpike Co. v. Ballard, 2 Met., p. 168; McReynolds, &c., v. Smallhouse, 8 Bush, p. 447, and other cases referred to in them. (Conna v. The Mayor of N. Y., 1 Selden, 292.)

No act of the legislature should be declared unconstitutional because of literal inaccuracy in the use of words composing the title if, according to their popular acceptation, they embrace the subject of the act. We are therefore of the opinion that the act is not open to the objection just considered.

Second. It is asserted that the act violates section 30 of article 2 of the constitution, which declares that "all bills for raising revenue shall originate in the house of representatives; but the senate may propose amendments as in other bills, provided that they shall not introduce any new matter under color of amendments which does not relate to raising revenue."

It is admitted that the bill in this instance originated in the Senate.

If, therefore, it be a bill "for raising revenue," it is unconstitutional.

According to Mr. Story, section 874, section 7, article 1, of the constitution of the United States, which is in the exact language of the first clause of the section above quoted from the present constitution of the state, means what are usually termed "money bills," and that, in practice, the constitutional provision is applied to bills to *levy* taxes in the strict sense of the word.

Such seems to be the view of Judge Tucker. (Tucker's Blackstone, Appen., 261.)

"A bill for raising revenue," as we understand it from the debates on the federal constitution, authorities, and text-writers, embraces all appropriations of money for the public treasury where the bill either provides for the levy of duties or taxes, capitation or *ad valorem*, upon the people, or is a part of a system of laws or another bill which does so provide.

A bill may originate in the senate for the appropriation of money for or from the treasury, unless it necessitates the levy of taxes or duties to meet its requirements.

The principle underlying this provision of the constitution is founded on the ground that the people are bound to pay the taxes to support the government in consideration of protection to their lives, liberty, and property; hence, the power of taxation was placed in the hands of the popular branch of the legislature as a means of security to the people, from whom its members are selected, against exactions by taxation for other than strictly governmental purposes.

This view excludes from the comprehension of this constitutional clause such bills as appropriate money to or from the treasury, raised from the people in consideration of other benefits and services than protection in their lives, liberty, and property.

Hence, it has been held that "a bill establishing rates of postage is not a bill for raising revenue within the meaning of the constitution," because an equivalent was returned to the citizen on whom the increased postage fell in carrying and distributing his mail matter. (13 Blatchford, 207.)

So the act incorporating a town, conferring upon it the incidental power to tax the people of the town, was held

not to be "the laying of a tax" or a bill for raising revenue. (23 Georgia, 556, Harper v. The Commissioners.)

It is clear from every source that the terms "bills for raising revenue" are confined to bills to levy taxes in the strict sense of the word, and do not embrace bills for other purposes which incidently create revenue, unless so framed as to draw money from the people, with no other advantage or benefit to them except the general protection which belongs to the citizen under our form of government as a matter of common right.

The act before us incidentally turns money into the treasury. The reduction of the fees and salaries of the officers named necessarily results in increasing the sums in the treasury to the extent of the amount these officers may collect for their services beyond $3,000, deputy hire and necessary expenses.

But the sums collected by them from the litigant or persons for whom the services may be rendered are in consideration of such services, and those sums are not, in the strict sense, taxes levied on the citizen any more than increased postage is a tax levied on the sender of mail matter.

Both have a consideration to support them, and that consideration is exceptional, and does not belong to the people in common, but it is rendered for the identical persons who are bound to pay therefor.

The act neither increases nor diminishes the burdens of the people or litigants who pay the fees of these officers for their services. The rate of fees remains the same, the effect and purpose of the act being to so regulate the compensation of these officers as to reduce the sum retained by them for their services to $3,000.

The Commonwealth v. Bailey.

We do not think the bill was, in any particular, a bill "for raising revenue" in the constitutional sense of those terms; and this brings us to the third and last objection, which is founded on the 20th section of article 13 of the constitution, that declares "that no *ex post facto* law, nor any law impairing contracts, shall be made."

This objection involves the startling doctrine that a public office is property, and that the acceptance of a public office by a citizen who has been elected thereto by the people is a contract between him and them, or the state which so insures to him the fees and compensation fixed by law for his official services, that they cannot be diminished during his incumbency.

This rule is not applicable to any public officer unless the constitution so provides. The constitution, in order to render the judiciary independent, does provide that the compensation of the judges of the appellate and circuit courts shall not be diminished during the time for which they shall have been elected; but no such provision can be found in the constitution relative to clerks, marshals, and other ministerial officers.

The presence of such a provision relative to judges and the chief executive, and its absence as to officers of the class to which the appellee belongs, leave no room to question the legislative power over the fees and compensation of the latter class of officers.

Under the New York constitution, which is similar to ours, considered in connection with the provision of the constitution of the United States, which provides that "no state shall pass . . . . any law imposing the obligation of contracts," the courts of that state held, in the case of

Warner v. The People, 7 Hill, 81, that "the legislature may regulate and add to or diminish the *duties* or *the fees* of a constitutional office."

The legislative power in this state is unrestricted, and is ample to abolish, alter, or add to the compensation of the officers named in this act, and the legislature may authorize such officers to be paid a salary, or retain the fees of office as compensation.

They accepted their offices, subject to the power of the legislature to regulate their compensation, by increasing or diminishing the fees, or causing the mode of compensation to be changed. This power cannot be curtailed under the pretense that these officers, who are nothing but public agents or servants and may resign at will, by accepting a public trust, made a contract which cannot be impaired by regulating their fees and compensation.

Such offices are not held by grant, nor were they created for the benefit of the incumbent, but for the use and benefit of the community. They cannot be sold, mortgaged, or transferred, and no property right in them as such can be invested in a citizen.

The only right which these officers have in their offices is the right to exercise the duties and receive the compensation therefor according to the manner and amount fixed and regulated, from time to time, by the legislature.

Wherefore the judgment is reversed, and cause remanded for further proceedings consistent with this opinion.