## E. H. Mark v. I. N. Bloom, J. C. Strother, et al.

(Decided January 10, 1911.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, Second Division).

1. Schools and School Districts—City Schools—Board of Education—Appointing Superintendent.—Under the Act of 1893 for the goverment of cities of the first class, a school board was created having charge of the city schools. Among other things it was authorized to elect a Superintendent of Public Schools for a term of two years. Held, the plain meaning of the act is to give the board of education the control of the subject and it was essential that they should have a superintendent in sympathy with them. The board was not required to put in a new superintendent, but they were empowered to do so, and whether they would do so or not was a matter of resting with them and this cannot be controlled by the courts.

2. Legislative Acts—Provisions.—The purpose of the act is to create a board of education and to define its duties. All its provisions are germain to the subject and the act relates to no subject not covered by the title.

3. Same.—The Legislature may select a subject of this sort and deal with it in one act without incorporating into the act all the existing laws touching the subject.

4. Inconsistent Acts—Repealed.—When it is provided that laws not inconsistent shall remain in force it necessarily follows that acts inconsistent with the act are repealed.

A. SCOTT BULLITT, MARK RYAN and JAMES HEMPHILL for appellant.

HUMPHREY & HUMPHREY, ARTHUR M. RUTLEDGE, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

Under the act of 1893 for the government of cities of the first class, a school board was created having charge of the city schools. Among other things this board was authorized to elect a superintendent of public schools for the term of two years. (Kentucky Statutes, section 2965.) E. H. Mark was elected by the board for the term beginning September 1, 1909, and expiring September 1, 1911. By an act approved March 4, 1910, a board of education was created consisting of five members to be elected from the city at large, at the general election in November, 1910. At that election appellees were elected as a board of education, and entered upon the discharge of their duties. Among other things, they made an order appointing E. O. Holland as superintendent, and removing Mark from office. He brought this suit to enjoin them from enforcing the order. The circuit court dismissed his petition, and he appeals.

The first question made by appellant is that the act does not confer upon the board power to disturb him during his term. Section 12 of the act provides:

"When the members of the board of education shall have been elected, shall have qualified, and shall have organized as hereinbefore provided, thereupon it shall become the duty of the existing school board and all officers, agents and employes thereof to surrender their places, and to deliver to said board of education all the common school property, both real and personal, of every kind whatsoever, and the control and management of the common school affairs of such city.     *     *     *

"Provided, further, That the first board of education may continue the employment and service of any existing officers, teachers, agents or other employes, in their several capacities in connection with the administration of school affairs, until such time as they effect the change of administrative system applicable to the common schools as contemplated in this act."

Section 14 also provides:

"It shall be the duty of said board of education, as soon as practicable after its organization to appoint a superintendent of schools, a business director, a secretary and treasurer, and such other officers, employes and agents as it may deem proper; provided, that no such officer, employe or agent shall be a member of said board."

The act is a long document but taken as a whole, its manifest purpose is to create a new board elected in a different way in place of the common school board which had been elected not from the city as a whole but from wards; and it was intended to give this board power to re-organize the school system and to control it. With this view it was provided in section 12 that all officers, agents and employes of the old board should surrender their places, and deliver to the board of education all the common school property of every kind, and the control and management of the common school affairs of the city. And to leave no doubt of its meaning it was further provided that it should be the duty of the board of education among other things, as soon as practicable after its organization to appoint a superintendent of schools. By another provision the board was authorized to continue the services of the existing officers if they saw fit until such time as they effected the change of administrative system contemplated by the act; but they were not required to do so. The plain meaning of the act is to give the board of education the control of the subject and the reason why a superintendent of schools is especially mentioned is not difficult to see. The board might be powerless to carry out many of the changes they desired if there was a superintendent hostile to such changes, and it was essential that they should have a superintendent in sympathy with them. The board were not required to put in a new superintendent, but they were empowered to do so. Whether they would do so or not was a matter resting in their discretion, and this cannot be controlled by the courts.

It is also insisted that the act is bad under section 51 of the Constitution:

"No law enacted by the General Assembly shall relate to more than one subject and that shall be expressed in the title and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

The title of the act is in these words:

"An act to amend the school laws and to create boards of education, and to define their duties in cities of the first class."

The purpose of the act is to create a board of education and to define its duties. All its provisions are ger-

main to this subject. The act relates to no subject not covered by the title. The board is to have control of the common schools of the city, and its power would naturally include the power to remove one superintendent and to appoint another.

It is earnestly insisted that the act amends an old law and that so much of it as is amended is not re-enacted and published at length. The act deals with a subject, the creation of a board of education, and the defining of its duties. The Legislature may select a subject of this sort, and deal with it in one act without incorporating into the act, all the existing laws touching the subject. Were the rule otherwise, legislation would be practically imposible. In Purnell v. Mann, 105 Ky. 87, we had this precise question before us, and so held. That case was followed in Herndon v. Farmer, 114 Ky., 200, Murphy v. City of Louisville, 114 Ky. 768, Weimer v. Commissioners, 124 Ky., 383.

The repealing clause of the act is in these words:

"The general school laws of this State, and all laws and parts of laws applicable to the general system of common schools in a city of the first class and not inconsistent herewith, shall be in full force and effect in such city."

When it is provided that laws not inconsistent shall remain in force, it necessarily follows that laws inconsistent with the act are repealed. The effect of the repealing clause is not different from what it would have been if it had read that all laws inconsistent with the act are repealed.

Judgment affirmed.