## Commonwealth v. Starr.

(Decided October 14, 1914.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. **Statutes—Interpretation of Penal Statutes—Rule.—**In the interpretation of penal statutes, the evil should be looked to which is intended to be corrected as well as the history of the efforts to correct it.

2. **Gaming—Operation of Pool Room.—Act of 1908—Indictment.—**As to the contention that the indictment is not sufficient for the reason that the Act did not create a new offense, but provided a more drastic punishment for the common law offense of operating a pool room, in view of the evil aimed at, it can hardly be said that only a more drastic punishment was intended, and the indictment is held sufficient.

3. **Gaming—Operation of Pool Room—Provisions of Criminal Code.—**The indictment complained of used the language of the act itself and could not more certainly have indicated to the accused the nature of the accusation against him as well as the circumstances under which he was charged with having committed it.

4. **Gaming—Operation of Pool Room—Construction of Act—Section 51 Constitution.—**As to the contention that the act is in conflict with section 51 of the Constitution in that it purposes to make it an offense to provide a room where there is no assemblage of persons, or to bet on anything except on a race or other contest run and decided, and does not indicate a purpose to make it an offense to maintain a place where money is received and deposited to be transmitted elsewhere to be bet, it cannot be said that there is anything in the act that does not relate directly or indirectly to the suppression of the places referred to in the title, or that has a natural connection with the subject.

JAMES GARNETT, Attorney General, J. M. HUFFAKER, Commonwealth Attorney, and LORAIN MIX, Assistant Commonwealth Attorney, for appellant.

AARON KOHN, JAMES P. EDWARDS, ARTHUR H. MANN and KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellee was indicted under the first section of an act of 1908, the title of which is, "An Act declaring it unlawful and providing penalties for any person to provide, open, control, manage or keep any room, building, float, vessel or premises in this Commonwealth wherein any persons may assemble and congregate to bet and wager money upon horse races and other contests run

and decided in this State or in any other State or country, or to aid or abet another in so doing, or to assemble or bet or wager therein.'' The first section of that act provides:

"It shall be unlawful for any person to provide, manage, maintain, or keep any room, building, float, vessel or premises in this State, or to aid and abet others in so doing, wherein persons assemble and congregate to bet and wager money or other things of value on the result of any horse race, or any other contest between man or beast run or to be decided in this State, or any other State or country, or advertised, posted or reported as having been run or to be run; or wherein any such money is bet or wagered or received and deposited to be transmitted elsewhere to another to so bet or wager, or wherein or whereat any money or other things of value shall be received or paid for any ticket, lot, pool or chance on the result of any such horse race or races run or to be run in or out of the Commonwealth of Kentucky, or advertised, posted or reported as having been so run or to be run, and any person or persons who shall violate any provisions of this section shall, on conviction, be fined not less than one thousand ($1,000) dollars nor more than five thousand ($5,000) dollars and confined in the county jail not less than six (6) months nor more than twelve (12) months for each offense; and each day that such pool room, building, float, vessel or other premises is thus maintained, kept, operated or conducted shall constitute a separate offense.''

The indictment is as follows:

"The grand jury of the county of Jefferson, in the name and by the authority of the Commonwealth of Kentucky, accuse Lawrence Starr of the offense of unlawfully and wilfully providing, managing, maintaining and keeping a room, building and premises in this State wherein money was bet and wagered and received and deposited to be transferred elsewhere to another to so bet and wager, on the result of horse races to be decided in this State and in other States and countries and advertised, posted and reported to be run and as having been run, committed in manner and form as follows, to-wit:

"The said Lawrence Starr in said county of Jefferson, State of Kentucky, on the 8th day of January, A. D., 1914, and within twelve months next before the finding of this indictment, did unlawfully and wilfully pro-

vide, manage, maintain, and keep a room, building and premises in this State, to-wit, a room located in the city of Louisville on the south side of Jefferson street, between Fourth and Fifth streets, over Grote's saloon, wherein money was then and there bet and wagered by Edwin Jennings, Rivers Wright and other persons whose names are unknown to the grand jurors, with said Starr and his agents, acting for him, on the result of horse races to be decided in the State of Kentucky and in other States and countries and at said time advertised, posted and reported to be run and after such races, as having been run, and wherein money was received from and deposited by said Jennings, Wright and others, unknown to the grand jurors, to be transferred elsewhere to another whose name is unknown to the grand jurors, to be so bet and wagered on the result of such races, said money being so deposited with and received by said defendant and his agents acting for him; the grand jurors further state that the place and premises so maintained and damaged by said defendant, were not an enclosure during a regular race meeting wherein horse racing was being conducted under license from the State Racing Commissioners of this State and was not an enclosure wherein trotting or pacing races were being conducted by a regularly organized association, organized for that purpose; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the Commonwealth of Kentucky.''

The sufficiency of this indictment is attacked upon three grounds. First. That the act in question did not create any new offense, but merely provided a more drastic punishment for the common law offense of operating a pool room, and that, therefore, the indictment was defective in failing to allege, (1) that the defendant kept a room for the purpose of having persons to assemble and congregate to bet and wager; (2) that persons did in fact assemble and congregate to bet and wager; (3) that money was won and lost; (4) that the place was in the occupation and under the control of the defendant. Second. Because the facts and circumstances constituting the offense are not set forth with that degree of certainty and particularity required by sections 122 and 124 of the Criminal Code. Third. Because even if the act is held to create new offenses yet the body of the act, in so far as it goes beyond the scope of the alleged restrictive title, is void because in viola-

tion of section 51 of the Constitution. That is to say that the title to the act gives no indication that it purposed to make it an offense to provide a room where there is no assemblage and congregation of persons, or to bet on anything except on a race or other contest *run and decided;* nor does it indicate a purpose to make it an offense to maintain a place where money is received and deposited to be transmitted elsewhere to be bet.

The lower court sustained the demurrer solely upon the last named ground, but we will consider them in the order named.

It is a safe rule in the interpretation of penal statutes to look to the evil which is intended to be corrected as well as to the history of the efforts to correct it. For a number of years presistent but ineffectual efforts in Kentucky have been made to suppress pool rooms and kindred places where bets may be made on horse races or other contests. It has been ascertained by experience that an indictment for the common law offense of committing a nuisance by maintaining a pool room has not, and does not, suppress the evil. It has been held that in order to maintain a conviction under such a charge an actual *occupation and control* of the premises by the accused must be shown, and experience has demonstrated how difficult this is, and how ineffectual prosecutions under the common law charge have been.

With this condition before it the Legislature of 1908 passed the act in question, and even a cursory examination of it will disclose that it was carefully and skillfully drawn by persons who must have been familiar with the conditions they sought to correct, as well as with the rulings on the subject.

In view of this history of this great evil, which has been for more than a quarter of a century almost a public scandal in Kentucky, it can hardly be said that the act in question was intended *only* to provide a more drastic punishment for the common law offense of operating pool rooms; if it had only been so intended it would have required only a line or two to have accomplished the purpose.

As already stated, it was essential under a common law indictment for operating a pool room to allege and show not only the occupation but the control of it by the defendant, while under the express terms of the act in question neither the occupation nor control is essential to the offense denounced by it; it is only necessary for the

defendant to provide or manage, or maintain, or keep the premises wherein the persons meet or assemble, or bet or deposit money to be sent elsewhere to be bet.

Not only the history of the efforts to check or suppress this evil shows an intention by the Legislature to create offenses separace and distinct from the common law offense of maintaining a pool room, but the very language employed by the statute is conclusive of that question.

The first section of the act quoted, when fairly interpreted in the light of history, as well as by the express language employed, creates four separate and distinct offenses:

First.    The first paragraph makes it unlawful to provide, manage, maintain, or keep any room or premises wherein persons assemble and congregate to bet and wager money on the result of any horse race or other contest, or any contest advertised to be run or as having been run; this paragraph in and of itself creates an offense, and it is not necessary under its terms that any bet or wager should *actually* have been made; the keeping or providing of the premises and the assembling of the persons there for the purpose of betting completes this offense under the express language of the act.

Second.    If such a place be provided or kept wherein money is bet or wagered the second offense denounced by the statute is complete; and to be guilty of this offense it is not necessary that there should have been an assemblage or congregation of persons.    The keeping or providing of the place and the fact that money was bet and wagered therein is sufficient.

Third.    If any such place is provided or kept wherein money is received and deposited to be transmitted elsewhere to be bet or wagered the third offense is complete, and it matters not whether the money so received and deposited is actually transmitted elsewhere or actually bet or wagered; the very act of providing and keeping the place and receiving the money constitutes the offense so denounced.

Fourth.    And if any such place be provided or kept wherein any money shall be received or paid for any ticket, lot, pool, or chance on the result of any horse race, whether run or not, then that offense is complete; the act of providing the place and receiving the money at that place for such ticket, lot, or pool completes the

offense whether the race be actually run or only adver-
tised to be run.

The indictment in this case, in the language of the
statute, charged the providing and keeping of a place
where money was bet and wagered, and that money was
received and deposited to be transmitted elsewhere to
be bet and wagered on races either actually run or ad-
vertised to be run, and was, therefore, sufficient under
the second and third classifications above.

We are not impressed with the force of the argument
that the indictment is insufficient under the provisions
of sections 122 and 124 of the Criminal Code; it is pro-
vided by section 122 that an indictment must contain a
statement in ordinary and concise language of the acts
constituting the offense, in such manner as to enable a
person of common understanding to know what is in-
tended, and with such degree of certainty as to enable
the court to pronounce judgment. It is provided by
section 124 that the indictment must be direct and cer-
tain as to the party charged, the offense charged, the
county in which the offense was committed, and the par-
ticular circumstances of the offense.

The indictment in this case charges that the defend-
ant provided and kept at a certain place in the city of
Louisville, county of Jefferson, a room wherein money
was then and there bet on the 8th day of January, 1914,
by certain persons therein named, and that money was
there deposited by certain named persons and received
from them by the defendant and his agents to be trans-
mitted elsewhere to be bet on races.

The indictment used the very language of the act
itself and could not more certainly have indicated to the
accused the nature of the accusation against him as
well as the circumstances under which he was charged
with having committed it.

As to the third question, the fundamental error of
the lower court was in treating the title to the act as
restrictive rather than general. The title to this act on
the contrary is unusually comprehensive; one can not
read it without being impressed with its general pur-
pose to suppress places where gambling on horse races
and other contests is encouraged or may be indulged in;
unerringly it points to the legislative purpose to destroy
this insidious evil which has so long infested our State.

Section 51 of the Constitution was never intended to
be so narrowly construed as to destroy the practical ef-

fect of legislation. The reason section 51 was inserted in our Constitution is fully gone into and discussed in the leading case in this State on that subject of Phillips v. Covington & Cincinnati Bridge Company, 2 Met., 221, wherein it is said:

"A practice had become prevalent of uniting in the same act of the Legislature subjects which had no relation to each other, and which were wholly dissimilar and unconnected. Hence it not unfrequently happened that the title to an act gave no indication whatever of some of the subjects to which its provisions related. And by permitting amendments to be made to a bill, by which distinct and unconnected matters might be introduced into and made a part of it, an improper influence was sometimes brought to aid in its final passage. To remedy this evil the constitutional provision under consideration was adopted. Such a construction should, therefore, be given to it as is necessary to render it effectual in accomplishing the object for which it was designed. But it should not be so construed as to restrict legislation to such an extent as to render a different act necessary where the whole subject matter is connected, and may be properly embraced in the same act.

"It is not necessary for the accomplishment of the purpose contemplated to go from one extreme to the other, nor would such a course be consistent with the intention of the framers of the constitution. This prohibition should receive a reasonable and not a technical construction; and, looking to the evil intended to be remedied, it should be applied to such acts of the Legislature alone as are obviously within its spirit and meaning. None of the provisions of a statute should be regarded as unconstitutional where they all relate directly or indirectly to the same subject, have a natural connection, and not foreign to the subject expressed in its title."

This view of that section and the manner of its interpretation has been consistently followed by this court. See Eastern Kentucky Coal Land Co., Inc. v. Commonwealth, 127 Ky., 702; Thompson v. Commonwealth, 159 Ky., 8.

Applying this rule to the title of the act in question, and to the body of section 1 of the act, it can not be said that there is anything in that section that does not relate directly or indirectly to the suppression of the places referred to in the title, or that has not a natural

connection with that subject; there is no single provision in section 1 which does not relate directly to the suppression of this evil.

The legislative branch of the government has done its full duty in the effort to suppress this vice by enacting this comprehensive and all-sufficient statute; it only remains for the other branches to do theirs as well.

Pool room betting possesses none of the elements of sport; the races are not seen, the horses are not seen—it is not ever known that the race is actually run. There is none of the exhilaration or excitement of witnessing the trials of speed and endurance. In such betting the elements of chance are entirely eliminated if the practice of pool room betting is persisted in; the operator so arranges the odds each day that, even though the bettor wins occasionally, if he continues to patronize the institution (which he usually does) there can be but one result.

The judgment is reversed, with directions to overrule the demurrer.