## Estes v. State Highway Commission et al.

(Decided June 20, 1930.)

CHARLES H. MORRIS for appellant.

J. W. CAMMACK, Attorney General, CLIFFORD E. SMITH, Assistant Attorney General, and JOHN S. CARROLL for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The General Assembly at its regular session in 1928 enacted chapter 172 of the published acts of that year known as the Murphy Toll Bridge Act, and that act now comprises sections 4356s1 to 4356s15, Ky. St. The purpose of that act was to confer power upon the state highway commission to enter upon a plan of constructing bridges connecting and making more convenient to the traveling public the primary roads of the state, and connecting the primary roads of this state with main highways in other states. A reading of that chapter shows that the main idea running all through it is that the state highway commission may sell bonds to obtain the necessary funds to construct such bridges and, as security for the payment of the bonds so issued, may pledge the tolls received from such bridges as security. Consonant with that main idea, the state highway commission as an administrative body was given authority to do all such things as might be found necessary within the limits of the act, and other laws on the subject, to carry into effect the purposes so expressed. The state highway commission was given wide discretion in the administration of the act, but its main purpose was clearly expressed and may not be materially departed from. Some question arose as to whether the physical bridge property might be pledged for the security of the bonds to be issued; whether the bonds were taxable under the laws of Kentucky; whether the state might pay a part of the cost of a bridge, or bridges, out of the general fund set apart for the construction and maintenance of highways; and, in addition, many questions of procedure arose, and that chapter of the acts of 1928 was before the court in the cases of State Highway Commission et al v. Veiling et al., 230 Ky. 381, 19 S. W. (2d) 967, and Bloxton v. State Highway Commission, 225 Ky. 324, 8 S. W. (2d) 392, and these opinions settled the questions therein discussed.

The state highway commission made a contract for the sale of more than $10,000,000 in bonds on May 22,

1929, but that contract was held to be invalid by this court in the Veiling case because of errors in procedure. Thereafter the state highway commission again advertised for bids, but received no satisfactory bid. Another advertising for bids resulted in the reception of bids which were satisfactory, consequently, on January 8, 1930, the state highway commission made an order awarding a contract for the bonds for seventeen bridges to C. W. McNear & Company, Stranahan Harris & Oatis, Inc., and Stiffel Nicholaus & Company, Inc.

The form of advertisement, prospectus, and form for bids were made a part of the petition in this action, and they are before the court. They appear to have been drawn in conformity with the opinion of this court in the Veiling case, and the procedure leading up to the contract of January 8, 1930, was in substantial accord with the opinion of this court in that case.

The General Assembly, at its regular session in 1930, enacted House Bill No. 641 which authorized the state highway commission to make a new contract with the purchaser of the bonds under the contract of January 8, 1930, but such substituted contract, of course, could not be made without the consent of the purchasers, and then could be made only in accordance with the provisions found in House Bill No. 641. The highway commission and the purchasers of the bonds agreed on a substituted contract on the 12th day of June, 1930, which covered the sale of the bonds for bridges included in the contract of January 8, 1930, except three bridges known as Clay's Ferry, Rio, and Munfordville bridges. These bridges appear to have been excluded from the contract because they were in a different class from the other fourteen bridges covered by the first contract. The contract of June 12, 1930, provides for the sale of bonds with the proceeds of which additional bridges not covered by the contract of January 8, 1930, should be constructed. All of the bonds were sold for a better price under the contract of June 12th than under the contract of January 8th, but the better price was obtained because the contract was so modified under the authority of the act of 1930 as to make the entire plan, or scheme, for the building of toll bridges more feasible.

The contract of June 12, 1930, bears evidences of careful preparation and a thorough understanding of the Murphy Toll Bridge Act of 1928, House Bill No. 641 of 1930, and the opinion of this court in the Veiling case, as

well as the case of Bloxton v. State Highway Commission et al., 225 Ky. 324; 8 S. W. (2d) 392.

After the contract of June 12, 1930, had been executed the appellant, a citizen and taxpayer of Franklin county, Ky., eligible to maintain such a suit, instituted an action in the Franklin circuit court attacking the validity of the contract because of procedural defects and constitutional defects in the acts themselves.

We shall summarize, with brevity, the points relied on by appellant for a reversal of the judgment as these points are found in the record, and as the point is stated we shall determine whether it is meritorious.

The first point is that House Bill No. 641 is unconstitutional in that it violates section 51 of the Constitution of Kentucky, which contains a provision that no law shall relate to more than one subject which must be expressed in the title. It is said that the title relates to more than one subject, but it requires no profound thought to determine that the title relates to the construction of toll bridges under the supervision of the state highway commission and every sentence and phrase in the title relates to that one subject. The title is unnecessarily prolix. It is never required that the title state the general manner in which the object of an act is to be accomplished. Collins v. Henderson, 74 Ky. (11 Bush) 74; Commonwealth v. Bailey, 81 Ky. 395, 4 Ky. Law Rep. 384. Stating the subject-matter of an act more in detail in the title than is necessary does not render the act unconstitutional. Allen v. Hall, 77 Ky. (14 Bush) 85. If all the provisions of an act relate to the same subject and are naturally connected and are not foreign to the subject expressed in the title it is sufficient. Commonwealth v. Starr, 160 Ky. 260, 169 S. W. 743; Mark v. Bloom, 141 Ky. 474, 133 S. W. 203. It is only required that the title be fairly expressive of the context of the act. Commonwealth v. Barney, 115 Ky. 475, 74 S. W. 181, 24 Ky. Law Rep. 2352. It is not essential that every provision in an act be specifically referred to in the title. It is only necessary that each provision shall be germane and not foreign to the title. Duke v. Boyd County, 225 Ky. 112, 7 S. W. (2d) 839. The purpose of section 51 of the Constitution was to enable a person reading the title of an act to obtain a general idea of the subject treated in the act. Thompson v. Commonwealth, 159 Ky. 8, 166 S. W. 623.

Measured by the opinions cited, House Bill No. 641 relates to only one subject and that is fairly expressed in

the title. The title is sufficient and the act is not unconstitutional by reason of any defect in the title.

The next point raised against House Bill No. 641 is that it violates section 29 of the Constitution of Kentucky in that it vests the legislative power of the state in the General Assembly in that the act delegates to the highway commission the power to determine what bridges shall be coupled or united for financing purposes, so that the tolls upon all bridges so united shall be continued until the bonds issued to pay the cost of such bridges shall have been paid. It is insisted that coupling the bridges together results in compelling the payment of toll on some bridges that would be freed earlier if they were not coupled with other bridges, and that the power to make such an arrangement is vested in the General Assembly and cannot be delegated to the commission.

In the case of Bloxton v. State Highway Commission et al., 225 Ky. 324, 8 S. W. (2d) 392, it was held that the Murphy Toll Bridge Act did not violate sections 27 and 28 of the Constitution of Kentucky in that it delegated legislative powers to the state highway commission by authorizing it to fix the rate of toll for each bridge, terms and maturity of bonds, and terms upon which bids should be made as such matters were administrative and not legislative. It was there held that legislative powers may not be conferred upon any executive board, but administrative powers may be conferred upon a board without violating those provisions of the Constitution requiring a separation of legislative, executive, and judicial departments. By the provisions of section 29 of the Constitution all legislative power is vested in the General Assembly, but that section does not forbid the delegation of administrative powers, and the coupling of bridges as allowed by that act is an administrative power that could be conferred upon the commission. It was held in the case of Hunter v. City of Louisville, 204 Ky. 562, 265 S. W. 277, that an act authorizing a commission for the construction of a memorial building to make and enforce rules and regulations for the conduct of its business was not an unauthorized delegation of power. In the case of Klein et al. v. City of Louisville et al., 224 Ky. 624, 6 S. W. (2d) 1104 it was held that an act authorizing a city of the first class to construct and operate bridges across any navigable stream forming a state boundary and delegating power to the commission to fix tolls to be charged was not an unauthorized delegation of legislative power to

the commission. The opinion in the case of Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828, held that the General Assembly had authority to delegate to presiding officers the power to appoint members of a commission, and that the delegation of power to the commission to select locations for the establishment of normal schools was not an unlawful delegation of authority. House Bill No. 641, construed in the light of these opinions, does not delegate legislative power to the state highway commission, as the duties of a highway commission in coupling bridges are administrative and the act is not unconstitutional for the reason urged against it in this respect.

It is next urged that the bonds which the highway commission proposes to sell under the contract of June 12, 1930, are unauthorized because they are obligations of the commonwealth of Kentucky in that they are executed in its name and under its seal. The act of 1928 and the act of 1930 both provide that the bonds shall be retired, principal and interest, from the tolls of the bridges pledged for the security of the payment of the bonds. The bonds which the state highway commission propose to sell plainly provide that they shall be retired by the money received from the gross tolls of the bridges and not otherwise. The mere fact that they are executed in the name of the commonwealth, under its seal, and attested by the secretary of state does not make them obligations of the commonwealth to any greater extent than expressed in the acts. That point made against the judgment below is likewise without merit.

Another point relied on by appellant is that chapter 172 of the Acts of the General Assembly of 1928 is void at least to the extent that it provides that bonds issued thereunder shall be exempt from taxation which is violative of sections 3, 170, and 171 of the Constitution of Kentucky, and that any bonds issued containing a provision that they are exempt from taxation will be void as in contravention of these provisions of the Constitution. This contention of appellant must be denied upon the authority of the opinion in the case of Klein et al. v. City of Louisville et al., supra; Bloxton v. State Highway Commission et al., supra; State Highway Commission et al., v. Veiling et al., supra. It was held in these cases that an act is not invalid because it exempts from taxation bonds issued for the construction and maintenance of bridges to be built for public purposes, as such bonds are issued by a commission functioning only as an agent

of the city or state and payable only from a special fund to be derived from tolls. Section 170 of the Constitution exempts from taxation public property used for public purposes and bridges so built are public property used for public purposes, and the bonds sold to obtain the money to construct such bridges are exempt from taxation under the provisions of that section of the Constitution.

It is further urged that chapter 172 of the Acts of 1928 is void in that it declares that a bond such as it authorizes to be issued is a written evidence of indebtedness, and being such it is the creation of a debt of the commonwealth of Kentucky in violation of sections 49 and 50 of the Constitution. In the first place the debt created is not an obligation of the Commonwealth of Kentucky and is not payable otherwise than out of the tolls. That question was also determined by the opinions in the Klein, Bloxton and Veiling cases, and in the case of City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004. it was specifically held that bonds issued by the city for the erection of a water plant payable out of water rents were not debts within the meaning of the Constitution. They were held not to be debts within the meaning of the Constitution because they were to be retired out of the income and revenue derived from the operation of the water works plant.

It is argued that the bonds to be sold under the contract of June 12, 1930, will be void in that they will contain a statement on their face that they may be registered as to the principal thereof in books to be kept by the state treasurer so that only the registered holder and his registered assignee may collect the same. It is true the acts under consideration contain no specific authority for requiring the registering of the bonds with the state treasurer, and there is nothing in the act which would deny to the holder of an unregistered bond the right to receive payment thereof. But the requirement is administrative in its nature, and it was not beyond the power of the state highway commission to enter into a contract for the registration of the bonds with the state treasurer. No holder of unregistered bonds is before us asking for any relief.

It is urged that the proposed sale under the contract of June 12, 1930, includes bonds for projects Nos. 5, 6 and 7 mentioned and described in that contract and it is,

therefore, void because the sale of these bonds was not made after public advertisement as required by chapter 172 of the Acts of 1928, and that the bonds for these projects were not bonds which were embraced in the bid of the purchasers which was accepted by the contract of Jan. 8, 1930, and further that the bridges embraced in the projects mentioned were not coupled for financing purposes with any other bridge, or bridges, embraced in the contract as is required by the provisions of House Bill No. 641.

Under the provision of the federal act authorizing the construction of these bridges across streams that form the boundary between this and other states they cannot be grouped with intrastate bridges for financing purposes and the tolls for the retirement of the bonds cannot be pooled with such other bridges. A copy of the federal act which is before us shows that it authorizes the grouping of bridges and the pooling of the tolls in so far as it relates to instrastate bridges. The interstate bridges cannot be grouped with the intrastate bridges under the provisions of the federal act. The state highway commission, when all of the acts relating to it are considered, has broad powers and duties and it is authorized to do and cause to be done all things necessary to construct and maintain the system of primary roads, and where there is no provision of law covering any necessary thing to be done in the construction and maintenance of roads it is given authority to do, or cause to be done, such necessary things in the way and manner best calculated, in the judgment of the commission, to accomplish the necessary objects. The bridges embraced in projects Nos. 5, 6, and 7 were grouped for financing purposes as far as allowable by the federal act, and, under the broad powers of the commission, it was authorized to so treat them.

It is suggested, however, that these bridges were not included in the contract of January 8, and that bonds for their construction cannot be sold without advertising for bids as required by chapter 172 of the Acts of 1928. The learned Attorney General leaves us to answer that question the best that we can, as he advances no argument against the position assumed by the appellants. An examination of section 19 of House Bill No. 641 discloses a provision that if the purchasers of bonds under the contract of January 8, 1930, should waive any right they might have to purchase bonds for the three certain

bridges embraced in their bid, which bridges are now operated by the commission, such contract (the substituted contract) might embrace bonds to pay all or part of the cost of any additional bridge, or bridges, which the commission should then or thereafter deem it practicable and for the interest of the commonwealth to couple, or unite, for financial purposes as provided in that act. The authority to include additional bridges was extended by the General Assembly to December 31, 1930. This section clearly meant that if the purchasers under the contract of June 8, 1930, should surrender their right to acquire bonds on the three bridges operated by the state highway commission at the time that body might include other bridges up to a certain limit which has not been exceeded, and the bonds to cover the additional bridges should be included in the substituted contract. No advertisement was necessary as the act contemplated that the additional bonds for additional bridges should be included in the substituted contract, and if it had been required that any bids should be submitted pursuant to an advertisement the result may have been such as to render it impossible to include the bonds for the additional bridges in the substituted contract.

This brings us to the objection to the selling of bonds to enable Kentucky to pay her one-half of the cost of constructing the bridge across the Ohio river near Henderson, Ky. This is project No. 8 included in the bond contract of June 12, 1930. In September, 1928, Kentucky and Indiana entered into an agreement by which the commonwealth of Kentucky and the state of Indiana agreed with each other that Indiana should erect a bridge across the Ohio river near Henderson, Ky., and that, as and when the cost of such bridge should be paid from time to time by Indiana and a bill for one-half the cost submitted to Kentucky, that state would pay such bill for one-half of the cost of construction, witholding, however, a small amount, and that as and when each payment should be made by Kentucky she should acquire an equitable interest in the bridge in proportion to the amount so paid; that when completed Kentucky should operate and maintain the bridge and should charge and collect tolls for transit over the bridge in an amount sufficient to pay the cost and maintenance, operation, and repair during the period of toll collection, and sufficient also to pay the principal and interest of bonds to be issued by Kentucky

under chapter 172 of the Acts of 1928 for the payment of the cost of the bridge. Kentucky and Indiana were parties to an action which was determined by the Supreme Court of the United States (50 S. Ct. 275, 406, 74 L. Ed. —), and the opinion of that court directed Indiana to carry out her part of the contract. This means that the contract must be carried out, and no question can be made based upon the idea that Indiana may not carry out the contract. It is argued by appellant that the bond contract providing for the sale of bonds to pay Kentucky's part of the cost of the Ohio River Bridge at Henderson is void for several reasons. One is that neither of the acts under consideration authorizes the issuance of bonds except to pay the cost of bridges which shall become the property of the state highway commission for the use and benefit of the commonwealth of Kentucky, and that the agreement between Kentucky and Indiana expressly provides that Kentucky shall not thereunder acquire, or own more than one-half of that bridge. This objectin is without merit as the act is not susceptible of such narrow construction. The bridge does become the property of Kentucky in the proportion that Kentucky pays for its construction.

Another ground urged against the bonds covering the interest in the bridge near Henderson is that neither chapter 172 of the Acts of 1928 nor House Bill No. 641 of the Acts of 1930, nor any other law authorizes the issuance of such bonds unless tolls can be charged and collected for the use thereof, and that no law of Kentucky authorizes the collection of tolls except for bridges built, or purchased, by the commonwealth of Kentucky and owned by it in whole, and not in part. That construction of the acts under consideration is entirely too narrow. Kentucky pays for one-half of the bridge near Henderson. Moreover, we find in section 19 of House Bill No. 641 a provision limiting the total amount of bonds including those for additional bridges which the commission shall deem it practicable and for the interest of the commonwealth so to couple shall not exceed by more than $4,000,000 the amount of bonds called for by the contract of January 8, 1930. The act then provides that such limitation shall not apply to any additional bonds which the commission may issue under such contract to pay the total instead of only one-half the cost of any bridge embraced in said bid. It is difficult to say exactly what

the General Assembly had in mind, but clearly the removing of the limitation had application to the payment of one-half the cost of some bridge. Be that as it may, the fact that the bridge near Henderson was neither built by Kentucky nor purchased by Kentucky after it had been built affords no reason why the state highway commission may not issue bonds to enable it to carry out the provisions of the contract with the state of Indiana and pay one-half the cost of that bridge.

Another attack on the validity of the bonds issued to pay Kentucky's part of the bridge near Henderson is that neither chapter 172 nor House Bill No. 641, nor any other law of the state, authorizes the issuance of such bonds for any bridge unless the rates of toll for use of such bridge shall be subject to the determination of the state highway commission, and that under the provision of the Kentucky and Indiana agreement the rates and classifications of tolls fixed by the commission shall be subject also to the approval of the Indiana highway commission. This allows the state highway commission of Kentucky to fix rates and classification of tolls subject to the approval of the Indiana highway commission. No arbitrary power is given to the Indiana highway commission to reject the rates so fixed, and if they are fixed by the Kentucky state highway commission in accordance with the terms of the contract there is no reason to believe that the Indiana highway commission would refuse to approve, and certainly there could be no arbitrary refusal. After all, the Kentucky state highway commission fixes the rates and classifications of tolls on that bridge. The bonds so issued will not be invalid because the Indiana highway commission must approve the rates and classification of tolls fixed by the Kentucky state highway commission.

Another objection is that no law of Kentucky authorizes the issuance of such bonds for any bridge unless the right of the commonwealth to collect tolls therefrom for some extraordinary casualties or calamities shall be preserved even after the bridge shall have been fully paid for, and it is said that the Kentucky-Indiana agreement distinctly provides that the commonwealth of Kentucky shall have no right to collect tolls for the use of said bridge at Henderson for any purpose whatsoever after the bonds shall be paid. Chapter 172 of the Acts of 1928 and House Bill No. 641 of the Acts of 1930 do not require

as a condition precedent to the issuance of bonds that the commonwealth of Kentucky shall retain the right to collect tolls in cases of extraordinary casualties or calamities. The right to do so is conferred by these acts. Whether the state highway commission may surrender that right by contract is immaterial at this time, as the validity of the bonds issued for the purpose of acquiring one-half of that bridge does not depend upon what Kentucky may or may not do about something wholly disconnected with the issuance or retiring of the bonds. The state highway commission has the right, so it would seem, to maintain bridges independent of its power to collect tolls.

The last ground urged against the validity of the bonds proposed to be issued for the purchase of the interest in the bridge near Henderson is that the laws of Kentucky only authorize the issuance of such bonds to purchase a whole bridge, and a bridge that is complete at the time of the purchase and then ready for traffic, and because the highway commission is without authority to purchase a bridge, or an interest therein, by paying for an interest in it before it is completed, as provided for by the terms of the Kentucky-Indiana agreement, the bonds are rendered invalid. The objection probably is based on the ground that if Indiana should decline to build the bridge that Kentucky may be left with money invested in an uncompleted and valueless bridge. The arguement is not sound because Indiana must complete the bridge in accordance with the terms of the contract, and it would be a superficial construction of the acts in question to say that Kentucky could not take advantage of the generosity of Indiana in building the bridge and allowing her to pay her part as the work progressed. The state highway commission could, of course, avoid the point urged against the contract in this respect by advancing the money to Indiana to be held until the bridge should be completed, or by withholding payment until that time. But such a course would be but a quibble. The contract between the commonwealth of Kentucky and the state of Indiana contains provisions amply protecting all the rights of the sister states, and the terms of the contract are not beyond the power of the state highway commission of Kentucky to approve and ratify. The bonds, therefore, will not be invalid because Kentucky pays her part for that bridge as the work progresses.

On the whole, we find no valid reason to disturb the judgment of the chancellor below. The acts under which the state highway commission is proceeding are valid acts of the commonwealth of Kentucky; the contract with the state of Indiana is not in contravention of the laws or the Constitution of this state, and we are not concerned with the wisdom of the making of the contract if the state highway commission of Kentucky did not transgress its powers in entering into it. We think the commonwealth of Kentucky, through the state highway commission, acted wisely and within the law in making the contract. We find nothing in the contract of June 12, 1930, which transgresses any constitutional provision of our state, or the laws made pursuant thereto, and it is not shown by the contract itself, or otherwise, that the state highway commission was without power to enter into it. The court is of the opinion that the power to make such a contract was conferred upon the state highway commission by the acts of the General Assembly mentioned above.

Judgment affirmed.

Whole court sitting, except Judge DIETZMAN, who was absent.