## J. D. Van Hooser & Co. et al. v. University of Kentucky.

(Decided Feb. 11, 1936.)

WILLIAM L. WALLACE for appellants.

B. M. VINCENT, Attorney General, J. W. JONES, Assistant Attorney General, and STOLL, MUIR, TOWNSEND & PARK for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The General Assembly of Kentucky, at its regular 1934 session, enacted chapter 72 of the Acts of 1934, which is now section 4535m-1 to and including section 4535m-14 of the 1934 Supplement to the Kentucky Statutes. The title of the act reads:

"An Act to authorize the University of Kentucky, any of the State Teachers' Colleges and other state educational institutions to acquire, by construction or extension, buildings to be used in connection with such institutions and to issue bonds therefor, payable from the revenues of such buildings, and declaring an emergency to exist."

The title is followed by a preamble reciting the need of many of the state educational institutions of additional buildings and other physical facilities, and the fact that the federal government, through the Public Works Administration, is offering financial aid to the extent of a direct gift of 30 per cent. of the cost of labor and materials, and a loan of the remaining 70 per cent. of the cost of labor and materials at 4 per cent. interest, for the erection of needed public buildings for the use and benefit of society.

Section 2 of the act provides that

"For the purpose of defraying the cost of acquiring such buildings and appurtenances thereto by construction, any such state educational institution may borrow money from the Public Works Administration or other agency of the Federal Government and issue negotiable bonds. provided no such bonds shall be issued unless and until authorized by a resolution specifying the proposed undertaking, the amount of bonds to be issued and the maximum rate of interest such bonds are to bear, which shall not be more than six per cent (6%) per annum. Such resolution shall further provide that the proposed building or buildings and appurtenances which are to be acquired, are to be constructed pursuant to the provisions of this act."

The act creates a statutory mortgage lien upon the buildings and appurtenances acquired in accordance with the provisions thereof, and provides that the principal and interest of the bonds shall be paid out of the income and revenues of such buildings. Before

the issuance of such bonds the governing body of such educational institution must, by resolution, fix the rents, tolls, fees, and other charges to be imposed in connection with any such building for services to be thereby furnished, including the reasonable cost and value of any service rendered to the institution. The act further provides that the bonds shall not constitute an indebtedness of such institution, or the commonwealth of Kentucky, within the meaning of any constitutional provision or limitations.

The board of trustees of the University of Kentucky determined that in order to provide adequate facilities for educational purposes, it was necessary to erect a student union building, a central heating plant, and buildings for the College of Engineering and the College of Law. As the result of negotiations with the Public Works Administrator, a contract was entered into by the terms of which the federal government agreed to grant to the board of trustees of the university a sum equal to 45 per cent. of the cost of the buildings, but not to exceed in any event the sum of $165,-000, and to loan to the board of trustees the balance required to complete the buildings, amounting to $600,-000, with interest at the rate of 4 per cent. per annum. It was agreed, however, that the bonds could be sold to private individuals if a rate of interest lower than 4 per cent. could be obtained. Resolutions were adopted by the board of trustees in accordance with the provisions of chapter 72 of the Acts of 1934, and bids for the bonds were sought. Offers to take the bonds at a rate of interest lower than 4 per cent. were received from three bidders. The lowest bid was made by J. D. Van Hooser & Co. and W. E. Hutton & Co., jointly. They agreed to take the bonds on a basis of 3.4 per cent. interest. The successful bidders, entertaining a doubt as to the validity of the bonds, refused to take them until their validity had been determined. The University of Kentucky brought this action under the Declaratory Judgment Act, section 639a-1 et seq., Civil Code of Practice, to have that question determined, and to compel the defendants to take the bonds. The circuit court held that the bonds proposed to be issued would be valid and binding obligations, according to their tenor, and the defendants have appealed.

They urge three objections to the validity of the

bonds: (1) That chapter 72 of the Acts of 1934 violates various sections of the Kentucky Constitution; (2) that the bonds issued under the resolutions of the board of trustees of the university, drawn in accordance with the provisions of the act, constitute an indebtedness of the university and of the state of Kentucky in violation of the Constitution; and (3) that the university has no right or power to sell the bonds to a private individual, but must, under the provisions of the act, sell them to the federal government.

It is argued that chapter 72 of the Acts of 1934 violates section 51 of the Constitution, which provides that "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title," in that, while the title of the act restricts the subject to be dealt with therein to the construction and extension of buildings, the issuance of bonds therefor and the payment of same from the income and the revenues of such buildings, yet section 8 of the act, in addition to providing for the fixing of the rents, tolls, fees and other charges which are to be paid for the use of such buildings for the purpose of providing funds to pay off the bonds and interest thereon, deals with the further subject of providing for the operation and maintenance of such buildings out of the rents, tolls, fees, and other charges so paid.

The sole purpose of the act, as gathered from its title, preamble, and body, is to enable educational institutions of the state to acquire necessary buildings to be used for educational purposes, and provision for the operation and maintenance of such buildings was as necessary, in order to carry out the purpose of the act as stated in the title, as were the provisions for the construction and financing of the buildings. All of the provisions of the act are naturally related to, and reasonably connected with, the subject expressed in the title, and the body of the act contains no matter foreign to the title.

It is also urged that the act violates section 49 of the Constitution, which is a limitation upon the debt contracting power of the General Assembly, and section 50 of the Constitution, which provides that no act of the General Assembly shall authorize any debt to be contracted on behalf of the commonwealth, except for the purposes mentioned in section 49, without sub-

mitting the question to a vote of the people. The act in question does not authorize a debt to be contracted on behalf of the commonwealth. The bonds authorized by the act are payable only from the income and revenues to be derived from the operation of the buildings, and no obligation to pay the bonds of the build-thereon is assumed by the commonwealth.

The act in question was before this court for construction in Clay v. Board of Regents of Morehead State Teachers' College, 255 Ky. 846, 75 S. W. (2d) 550, 551, and, while the question of constitutionality was not raised, in the course of the opinion it was said:

"No question as to the validity of the enabling act is raised or attempted to be presented, nor do we perceive any grounds therefor, since the college proposed to be benefited by the improvement is not a municipality or taxing district within the provisions of sections 157 and 158 of our Constitution with reference to the limiting of indebtedness, and we have been cited to no provision of that instrument inhibiting the Legislature from conferring the power and authority on such institutions as is attempted by the enabling act."

In McDonald v. University of Kentucky, 225 Ky. 205, 7 S. W. (2d) 1046, 1048, the University of Kentucky, under an enabling act passed by the General Assembly at its 1928 session (Acts 1928, c. 64), proposed to convey to a trust company two sites on the university campus, for the purpose of erecting on each a dormitory, and to enter into a contract with the trust company for the erection of such buildings, and then to lease such buildings from year to year at a rental sufficient to amortize the total cost of the erection of the buildings within a specified number of years. Answering the contention that the enabling act violated section 157 of the Constitution, which limits the powers of municipalities to incur indebtedness, the court said:

"It will be observed that the limitation is on the power of a county, city, town, taxing district, or other municipality. In our opinion the provision deals only with those self-governing political subdivisions of the state possessing the power to raise revenue by taxation, and with respect to whose limit of indebtedness the voters in some instances

have a voice, and does not apply to state institutions that must look alone to the state for their support.''

Chapter 141 of the Acts of 1934 was an enabling act authorizing the State Board of Health to borrow money to pay for the erection of an additional building on a self-liquidating plan, and to execute its bonds for the amount so borrowed, and to secure the payment of such bonds by the execution of a mortgage upon the real estate held by it. In Hughes v. State Board of Health, 260 Ky. 228, 84 S. W. (2d) 52, 54, this act was assailed on the ground that it violated, among others, sections 49 and 50 of the Constitution. In discussing the act the court said:

"Taking up next the question of the loan, we find that it is secured by a mortgage on the real estate and an expressed lien 'upon the moneys at any time in the sinking fund and/or the interest account and/or the reserve fund.' We have here the question as to whether the execution of the mortgage and the issuance of bonds to secure the payment thereof constitutes a debt within the prohibitions of sections 49, 50, and 177 of the Constitution or any one or more of them.

"It may be observed from a reading of the proposed agreement and attached schedules that it is the expressed intent and purpose of the instruments of writing, and likewise the intent of the parties, that the lender is to look alone to funds from operating receipts to liquidate the indebtedness. There is nothing contained in the act or in the set-up which in any way obligates the commonwealth to pay any part or portion of the bonds.

"It is stated, and not denied, that the property conveyed to the board for the purposes mentioned is free from encumbrance. No tax levy will have to be made to meet the obligation created by the issuance of bonds. It is true that if the payments of the bonds are not met there may occur a foreclosure and consequent passing of the property to other hands, but should such be the case the commonwealth could not be sued to make good a possible deficiency judgment. * * *

"We can see no substantial grounds upon which it can be argued successfully that the transfer of the property to the board, and the pledging thereof by the board to secure the government loan, creates a debt against the commonwealth in contravention of sections 49 or 50 of the Constitution. Likewise section 177 is of no applicable effect, since there is no lending or pledging of credit to any individual or to any one of the bodies named in that section. This conclusion as respects section 177 applies with equal force to the item of interest hereinafter discussed. However, this particular point need not be elaborated to any extent, since the pledging of property of the state, particularly for the purpose of repayment of borrowed money, on what is known as the self-liquidating plan, has been fully approved. Estes v. State Highway Commission, 235 Ky. 86, 29 S. W. (2d) 583; Bloxton v. State Highway Commission, 225 Ky. 324, 8 S. W. (2d) 392; Klein v. City of Louisville, 224 Ky. 624, 6 S. W. (2d) 1104. In fact the plan was fully authorized, and its carrying out was held not to contravene the sections of the Constitution here invoked, long before the plan was generally known as the 'self-liquidating plan.' Christman v. Wilson, 187 Ky. 644, 221 S. W. 198."

The resolution adopted by the board of trustees of the university provided that the charges to be made for the use of the buildings to be erected should be paid into a special and separate fund by the university, and that the bonds should be paid out of this fund alone. The resolution was in accordance with the provisions of the act. In view of the foregoing authorities, we conclude that the act in question is not violative of any provision of the Constitution, and that the resolution adopted by the board of trustees of the university providing for the issuance of the proposed bonds and the method of their payment, is in strict compliance with the terms of the act.

We also conclude that the circuit court correctly held that the bonds could be sold to a private individual. Section 2 of the Act of 1934 provides that a state educational institution may borrow money from the Public Works Administration, or other agency of the federal government, for the purposes enumerated in

the act, but it was not the intention of the Legislature, by this provision, to prohibit the governing body of the institution from obtaining the money from some other source. The act itself contemplates that the bonds will be sold by the federal government to private individuals, and section 4 of the act provides that "such bonds shall be sold in such manner and upon such terms as the board of trustees, board of regents or governing body of such state educational institution shall deem for the best interest of such institution." The primary purpose of the act is to enable state educational institutions to erect buildings and to pay for them with bonds payable out of the revenues derived from the buildings. Viewing the act as a whole, it was clearly the intention of the Legislature to enable the governing bodies of such institutions to finance the construction of necessary buildings upon the best terms possible, and at the lowest rate of interest obtainable. The provision in section 2, relating to the borrowing of money from the Public Works Administration, is not mandatory.

It is also contended that the provision in section 4 of the act, exempting the bonds from taxation, is violative of sections 3, 170, and 171 of the Constitution. The bonds proposed to be issued will be similar in all respects to the bonds discussed in Estes v. State Highway Commission, 235 Ky. 86, 29 S. W. (2d) 583; Bloxton v. State Highway Commission, 225 Ky. 324, 8 S. W. (2d) 392; and Klein v. City of Louisville, 224 Ky. 624, 6 S. W. (2d) 1104, which had been exempted from taxation by an act of the Legislature, and in each of these cases it was held that an act exempting the bonds from taxation was not violative of these sections of the Constitution.

The judgment is affirmed.